130 So.2d 513 (1961)
Joseph N. GUIDRY, Plaintiff-Appellee,
v.
MICHIGAN MUTUAL LIABILITY COMPANY, Defendant-Appellant.
No. 257.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1961.
Davidson, Meaux, Onebane & Donohoe, by James E. Diaz, Lafayette, for defendant-appellant.
Piccione & Piccione, by Joseph J. Piccione, Lafayette, for plaintiff-appellee.
Before TATE, FRUGE and SAVOY, JJ.
FRUGE, Judge.
This is a workmen's compensation suit. From a judgment awarding compensation for total and permanent disability the defendant has appealed urging that the trial court erred in holding that plaintiff was totally and permanently disabled.
The lower court briefly analyzed the evidence and testimony as follows:
"Plaintiff, Joseph N. Guidry, a carpenter by trade, was injured in the course and scope of his employment on May 14, 1958, when he fell from a ladder, injuring his back. At the time he was employed by Point Coupe[e] Lumber Co., Inc., which carried workmen's compensation insurance with Michigan Mutual Liability Co., the defendant in this suit. The accident and coverage are admitted, compensation has been paid from the date of the accident until October 20, 1959. Plaintiff was examined and treated by Dr. Richard G. Saloom and Dr. Clarence Saloom, of Lafayette, from May 14, 1958, to August 11, 1958. He was then treated by Dr. James Gilly, an orthopedic surgeon, from August 11, 1958, until November, *514 1959. In addition, plaintiff was examined by Dr. Dean Echols, of Ochsner Clinic in New Orleans, a neurosurgeon, on May 13, 1959, and again on October 26, 1959, and also by Dr. William L. Meuleman, an orthopedic surgeon also of Lafayette.
"Plaintiff's history following the accident shows a series of episodes of back pain, radiating at times to the lower extremities, with subsiding of symptoms on rest and wearing a corset with which Dr. Gilly fitted him, but with a return of symptoms upon trying to resume his occupation. Dr. Gilly found the condition known as spondylolysis to exist in plaintiff's back, in the 5th lumbar vertebrae, as a result of taking new x-rays on November 15, 1959, this being a congenital defect of the spine rendering plaintiff prone to back injury and retarding his recovery.
"The medical testimony preponderates in favor of the plaintiff, and it is clear that the injury sustained by him on May 14, 1958, aggravated the spondylolysis in his back and, in addition thereto, caused a lumbo dorsal sprain, from which injuries plaintiff has never recovered to such an extent that he can return to his duties as a carpenter. It is true that Dr. Saloom and Dr. Gilly, over the long period of time they treated plaintiff, found him symptom-free and "recovered" from his injuries on several occasions, and even discharged him from medical care. On each occasion, however, it was but a matter of a few days when he returned with the same symptoms and pain, and treatment was resumed. Dr. Gilly, on his final examination of petitioner, said that he could do carpentry work, in his opinion, but would have to be careful of the position he assumed while working, how he lifted objects, and even the type of work he did. Obviously such a condition does not meet the requirements of the compensation act.
"Dr. Meuleman, who examined plaintiff on September 25, 1959, found him to be symptom-free. On cross-examination, however, he stated that in his opinion the injury of May, 1958, aggravated the congenital weakness or defect (spondylolysis) in plaintiff's back to such an extent that muscle spasm, pain, and all of plaintiff's other symptoms returned with only slight exertion or sustained carpentry work. This doctor further suggested a psychiatric examination of plaintiff, and a supplemental petition was filed alleging additionally that plaintiff is suffering from a traumatic neurosis.
"On the basis of Dr. Meuleman's recommendation, plaintiff was examined by Dr. John A. Fisher, a practicing psychiatrist in Lafayette, on November 20, 1959. This doctor on the basis of one examination, found plaintiff to be suffering from a psychoneurotic state caused by the accident of 1958."
Therefore the question is whether or not the plaintiff is disabled from doing heavy manual labor, and, if so, is such disability the result of the aforementioned accident. The lower court answered these questions in the affirmative. A diligent study of the testimony has not led us to a different conclusion. However, it has reassurred us of the correctness of the decision below.
Defendant contends that plaintiff's failure to have certain witnesses testify as to his disability should be construed favorably to defendant in that such failure constitutes presumptive evidence conclusively establishing that plaintiff is able to return to his usual and customary work. This contention is without merit. See Stevens v. Dowden, La.App., 125 So.2d 234, 236, and cases there cited. In Stevens v. Dowden, it was stated that:
"* * * A litigant is not obliged to produce all witnesses to the accident, he is simply under a burden to produce *515 sufficient evidence to prove his case by a preponderance of the evidence, * * which has been done in this instance, without contradictory testimony being introduced by the defendant. * * * Finally, the evaluation of a witness's creditability is primarily for the trial court. * * *"
In Circello v. Haas & Haynie Corp., La.App., 116 So.2d 144, 146, it was stated that:
"* * * plaintiff bears the burden of proving that any present disability was caused by an accident at work. * * * As plaintiff contends, an injury is compensable if an incident at work precipitates or accelerates a pre-existing pre-disposition or disease into becoming a present disability, or contributes to activation of such a latent condition into disability. * * * Likewise, a residual condition is legally disabling and compensable if, as a residual from an accidental injury, the possibility of a reoccurrence of a disabling condition upon a return to work is substantially increased as a result of the accident, as compared with the danger of such occurrence being caused by performance of the work before the accident. * * * (Citations omitted)."
It is our opinion that the plaintiff has proved that he has a present disability caused by the accident of May 1958. Prior to the original injury, plaintiff had always been a good worker. However, subsequent thereto, he suffered back pain upon attempting to return to his former occupation. And on one occasion when he had returned to work for his employer, Point Coupee Lumber Co., in endeavoring to level cement he suffered such intense pain that the foreman suggested that he quit working that day and return home and see a doctor for the pain. One of the orthopedists, Dr. Gilly, (whose deposition was admitted in evidence) testified that the plaintiff could work but that he would have to be careful in the positions he took while working and in the manner of lifting heavy objects in the course of his work. He further testified that due to the congenital defect of the fifth lumbar vertebrae, i. e. the spondylolysis, plaintiff would be more susceptible to injury from trauma than in a normal back and that this congenital defect probably prolonged the convalescence of plaintiff. Another orthopedist, Dr. Meuleman, (in his deposition) testified that plaintiff would probably be more prone to or more easily injured as a result of the trauma of May 14, 1958 and that the labors of a carpenter could serve the purpose of easily injuring the pre-existing condition of the fifth lumbar vertebrae, or spondylolysis. In view of this testimony and evidence it is self-evident that the possibility of a reoccurrence of a disabling condition upon return to work is substantially increased as a result of the accident. See Circello v. Haas & Haynie Corp., supra. Moreover, on the recommendation of defendant's own witness, Dr. Meuleman, plaintiff was examined by a psychiatrist. Dr. Meuleman testified that he felt the plaintiff was in the realm of psychiatric need and based this conclusion upon the fact that the plaintiff changed doctors so much in looking for a cure or remedy for his "pains"; that plaintiff apparently dwells on his injuries more than a normal person would; that it was hard to get the plaintiff to talk about any complaint other than his back complaints; that plaintiff evidenced the desire to obtain treatment that would relieve him of his pain; and that he felt that plaintiff was sincere "to a fault" if anything at all.
Plaintiff was examined by a psychiatrist, Dr. Fisher. Dr. Fisher examined the plaintiff, in the usual and customary psychiatric manner, and stated that in his opinion the accident of May 1958 was a precipitating factor of a psychoneurosis that plaintiff exhibited to him. In his opinion he found that plaintiff suffered from a psychoneurosis which had disabled the plaintiff. Furthermore he testified that it would be next to impossible for a man with a fourth grade education (as plaintiff has) to fake the *516 symptoms necessary to arrive at a conclusion of psychoneurosis or hysterical neurosis.
There is no question but that nervousness, neurosis, or emotional disturbances, super-induced by injuries suffered by a workman, can be just as devastating to the ability to return to work as are physical or anatomical injuries, and are equally compensable under the statute. See Lala v. American Sugar Refining Co., La.App., 38 So.2d 415, 421. If the plaintiff's physical condition resulting from the injury is of such a nature as to cause traumatic hysteria, as a result of which plaintiff is unable to work, then the claim is compensable. See Porter v. W. Horace Williams Co., La.App., 9 So.2d 60, and cases there cited. A present existing condition, the traumatic neurosis, may be established by subjective evidence if it is related to an original objective condition. See Miller v. United States Fidelity & Guarantee Co., La.App., 99 So.2d 511, and cases there cited. In the Miller case, Judge Hardy, ably and concisely discussed and defined post-traumatic hysteria. In the case of Dupre v. Wyble, La.App., 85 So.2d 119, as well as the Miller case, only one psychiatrist diagnosed that the physical injury was the precipitating factor which caused the disabling psychoneurosis, and having been uncontradicted, was accepted as true. In the case at bar Dr. Fisher testified that in his opinion the trauma of May 1958 was a precipitating factor and the resulting psychoneurosis had totally disabled plaintiff. This diagnosis, as in the Dupre case, was based on the history obtained from plaintiff, and also on all of the medical reports by the orthopedists and other doctors. The fact that Dr. Fisher's psychiatric diagnosis depends upon the truthfulness of the history upon which this diagnosis was based is of no moment. This same contention, that plaintiff's psychiatric testimony should be disregarded since it was based solely upon the doctor's naked belief of what the claimant had told him, was presented in the case of Webber v. Wofford-Brindley Lumber Company, La.App., 113 So.2d 23, 26. In the Webber case, with Judge Tate as the organ thereof, it was stated that "* * * the main outline of the history used for diagnosis by plaintiff's psychiatrist was corroborated by the lay testimony accepted as correct by the trier of fact. * * *" Furthermore in that case, as in this, the psychiatrist had the benefit of prior reports of physical examinations of the patient by several other doctors and specialists. Defendants further contend that the examination as conducted by Dr. Fisher (consisting of interrogation and discussion with the patient of his complaint and history, during an interview lasting forty-five minutes) was not a sufficient examination upon which to make a psychiatric diagnosis. This contention is also without merit for as in the Webber case, supra, the same contention was considered. There the court disposed of this contention as follows:
"Insofar as defendants complain that the diagnosis was based upon a single psychiatric interview, without the aid of physical examination or other mental or medical test, both psychiatrists based their diagnosis upon such a psychiatric examination, which they stated without qualification to be a sufficient basis for a correct diagnosis. In the face of this uncontradicted testimony by these specialists based upon their training and this recognized branch of medicine, we like the trial court are unable to accede to the argument that a psychiatric diagnosis produced as a result of such an examination should be disregarded simply because of a supposition, unfounded upon any medical training or evidence, that such examination is insufficient for the purpose. * * *" (Emphasis supplied, citations omitted.)
Dr. Fisher testified that his examination was that which is ordinarily used in making a psychiatric diagnosis. Such an examination consists of an interrogation of and discussion with the patient of his complaints and history, together with correlation *517 and evaluation of his responses and reactions based upon the examiners' psychiatric training and skill. The evidence in the record is not contradicted that plaintiff developed a disabling mental disorder, or psychoneurosis for which medical treatment will be required. This unrebutted evidence must be accepted as true. See other cases cited supra.
We find, as did the trial court, that the injury of May 14, 1958 caused a lumbodorsal sprain and aggravated a pre-existing congential defect, spondylolysis, and that as a residual from the injury the possibility of a reoccurrence of the disabling condition upon return to work has been increased (as evidenced by his unsuccessful attempts to return to work) and therefore the plaintiff is totally and permanently disabled from returning to his former employment. Moreover, this court finds that the injury of May 14, 1958, resulted in a traumatic neurosis or hysterical neurosis, which has further disabled plaintiff from returning to his former employment.
For the foregoing reasons the judgment of the trial court is affirmed. Appellant to pay all costs.
Affirmed.