LANDRY, Judge.
Plaintiff James Charleston instituted this action against his employer, Ross E. Coxe, doing business as Ross E. Coxe, Contractor, and American Insurance Company (Coxe’s insurer), in solido, to recover workmen’s compensation benefits in the sum of $35.00 per week for a maximttm of 400 weeks predicated upon alleged total and permanent disability said to have resulted from an accident sustained by plaintiff on October 19, 1959, within the scope and during the course of his employment by Coxe as laborer on a construction project. In addition to maximum compensation benefits plaintiff prayed for penalties, interest and attorney’s fees because of defendant insurer’s asserted arbitrary and capricious refusal to pay any benefits whatsoever.
After trial on the merits the lower court awarded plaintiff judgment against defendants, in solido, for compensation at the rate of $35.00 weekly from October 19, 1959, to March 16, 1960, and penalties against defendant insurance company in the sum of 12% of the amount of compensation allotted, together with attorney’s fees in the sum of $250.00. From said judgment' of the trial court all parties have-appealed, plaintiff requesting judgment for maximum compensation and increase in attorney’s fees to the sum of $1,500.00 initially prayed for and defendants urging that plaintiff be denied recovery of any compensation, penalties and attorney’s fees whatsoever and, alternatively, plaintiff’s right to compensation be limited and restricted to the period of disability found by the court below.
Considering that plaintiff’s accident and injury are acknowledged to have occurred within the scope and during the course of his employment by defendant Ross E. Coxe, Contractor (sometimes hereinafter referred to simply as “Coxe” for purposes of brevity) the present appeal presents the following issues: (1) Whether plaintiff sustained physical injuries rendering him totally and permanently disabled; (2) Whether plaintiff suffered total disability by reason of post-traumatic neurosis for any period of time following the accident and, if so, the duration thereof; and (3) Whether defendant insurer arbitrarily and capriciously withheld payment of compensation benefits thereby incurring liability for penalties and attorney’s fees as provided by the compensation statute of this state.
At the time of the accident in question plaintiff was employed by defendant Coxe as a laborer in the construction of a two-story building at Louisiana State Uni-- *497 versity. More specifically plaintiff was engaged in throwing wooden braces colloquially known as “T-Jacks” out of the building. According to testimony appearing in the record a “T-Jack” is a piece of timber four inches square and eight feet long (commonly known as a four by four) with a to 3 feet cross piece of four by four affixed to one end to form a rough “T”. While throwing one of these T-Jacks from the building a nail protruding therefrom caught in plaintiff’s glove causing plaintiff to lose balance and fall a distance of approximately eight feet and land on his face and hands in soft mud outside the edifice in which he was working. In the fall plaintiff struck his forehead and right knee, elbow and arm. The accident occurred approximately at noon and although plaintiff testified he was rendered unconscious for an extended period of time the testimony of fellow employees shows he was only stunned and shortly thereafter resumed his duties and finished his day’s work. Upon leaving the job at quitting time plaintiff was taken by a co-worker to the office of Dr. Shirley J. Woodford who examined plaintiff and finding abrasions and contusions of his right knee, wrist and elbow administered a tetanus toxoid. The X-rays taken by Dr. Woodford proved negative as to fractures and she instructed plaintiff to return for further examination on October 23, 1959, which plaintiff did not do. Plaintiff, however, did return to Dr. Woodford on October 27, at which time Dr. Woodford found his injuries to be healing but she did not feel he was quite ready to resume his former duties and suggested that plaintiff return October 30. Dr. Wood-ford again saw plaintiff October 30 (a Friday) and found him recovered to the extent she gave him a note instructing him to return to work the following Monday and return to her for yet another examination within the week, both of which instructions plaintiff ignored.
On January 7, 1960, plaintiff was referred to Dr. Woodford by plaintiff’s attorney. Because plaintiff then complained of a back injury (an injury not previously made known to Dr. Woodford), Dr. Woodford made no further examination but immediately made appointments for plaintiff to see Dr. Moss Bannerman, an orthopedist, and Dr. Joseph M. Edelman, a neurosurgeon. As a result of X-rays taken of plaintiff’s back it was revealed that plaintiff (whose exact age is unknown but who states he is approximately 45 years of age) was afflicted with a degenerative arthritic condition of the lumbosacral spine unrelaD ed to trauma.
Dr. Edelman made a neurological examination of plaintiff on January 15, 1960, which test included an electro-encephalo-gram. He found no evidence of injury to plaintiff’s central nervous system and was unable to assign any disability attributable to plaintiff’s accident.
Predicated upon a physical examination of plaintiff and interpretation of X-rays of plaintiff’s back, Dr. Bannerman noted “moderate” arthritic changes and concluded that as of January 13, 1960, (the date of his examination), plaintiff was fully recov^ ered and able to resume his former employment. His examination of plaintiff’s back revealed a full range of motion, no muscle spasm in the erect or reclining positions, no sensory changes in the extremities and normal strength and reflexes. The degenerative changes noted between plaintiff’s second and third lumbar vertebrae were considered by Dr. Bannerman as consistent with a previous back injury of considerable duration. He felt the hyperthropic changes present were related to plaintiff’s age rather than any particular disease. He was of the further opinion that any aggravation of plaintiff’s pre-existing arthritic condition induced by the accident of October 19, 1959, should have manifested itself within 48 hours of plaintiff’s injury. Upon a second examination of plaintiff during March, 1960, he found plaintiff’s condition substantially the same.
Dr. Howard Hansen, a general practitioner, first examined plaintiff on Novem *498 ber 2, 1959 (after plaintiff’s initial three visits to Dr. Woodford in October but before Dr. Woodford’s referral of plaintiff to Dr. Bannermau and Dr. Edelman in January, 1960). Dr. Hansen found plaintiff had an epicondylar bursitis of the right elbow, a sprained right wrist and a sprained cervical and lumbosacral spine which diagnosis was made without the aid of radiology.
A second examination of plaintiff by Dr. Hansen on November 24, 1959, disclosed a scoliosis with the lumbar curve to the left and the thoracic curve to the right. Dr. Hansen observed the right paravertebral muscles to be spastic and also found that a leg raising test failed to relax spasm noted in the right lumbar muscles. Tenderness was detected in plaintiff’s left temple area about the zygomatic arch and extending over an area approximately two inches in diameter. Additionally, the superficial veins on the left temple area were found to be dilated and a trigger point of tenderness noted about one inch lateral to the side of the orbital ridge and one half inch above the zygomatic arch. Plaintiff also experienced tenderness beneath the end of the ulna on the back of his right wrist and over the lateral epicondyle or outside part of the right elbow. Plaintiff complained of pain in all the affected areas as well as his right knee. Dr. Hansen was of the opinion the paravertebral muscle spasm in plaintiff’s back could not be feigned throughout the straight leg raising and rocking tests to which plaintiff was subjected. Based on these findings and examination of X-rays taken of plaintiff, Dr. Hansen concluded plaintiff had suffered an aggravation of the pre-existing degenerative arthritis and was disabled as of that date but could give no prognosis concerning plaintiff’s disability.
From the foregoing appearing in the record, it is apparent that Dr. Plansen was of the opinion plaintiff was disabled as of November 24, 1959, (and the learned trial judge was evidently influenced by this testimony), whereas Drs. Bannerman and Edelman believed he was fully recovered by mid-January, 1960. Dr. Magruder, (a psychiatrist, whose testimony will hereinafter be considered in detail) found that as of mid-March, 1960, plaintiff was suffering disability both mental and physical in origin.
In view of the aforesaid testimony we conclude plaintiff was not totally and permanently disabled because of physical injury and now address ourselves to the question of plaintiff’s alleged disability by virtue of post traumatic neurosis. On this particular issue we note that plaintiff’s claim is based almost entirely on the testimony of a single witness, namely, Dr. L. F. Magruder, psychiatrist, who examined plaintiff for approximately one hour on March 4, 1960, and again for a period of approximately one and one-half hours on June 24, 1960. To assist him in his evaluation of plaintiff’s condition Dr. Magruder was furnished copies of reports of the previously mentioned medical doctors. In addition to these medical reports, Dr. Ma-gruder examined plaintiff visually and orally and to a limited extent, physically, the latter type of examination consisting in his checking for muscle spasm without requiring plaintiff to remove his clothing. Plaintiff’s background, education and other relevant and pertinent history was painstakingly elicited by oral examination and revealed plaintiff to be an illiterate Negro of low mentality (a fact readily ascertainable upon a reading of plaintiff’s testimony appearing in the record). Upon completion of his first examination Dr. Magruder was uncertain as to whether plaintiff was suffering from post traumatic neurosis and to some degree suspected plaintiff of malingering. After completing his second examination, however, Dr. Magruder concluded plaintiff was not a malingerer. He noted some evidence of depression, anxiety and conversion reactions. Formally stated, he diagnosed plaintiff’s condition as psychoneurotic reaction, mixed type, resulting, caused by or precipitated by accident. Dr. Magruder also felt plaintiff was unable to return to his *499 former employment and because of plaintiff’s low intelligence plaintiff would not respond to treatment. It was Dr. Ma-gruder’s further opinion plaintiff would probably recover in a period of about two years without treatment. At least a part of Dr. Magruder’s diagnosis was predicated upon the conclusion that plaintiff was disabled because his neurotic condition would make him more accident prone. From a purely physical viewpoint, Dr. Magruder opined the pain plaintiff experienced would prevent plaintiff from doing laborious work. According to Dr. Magruder, plaintiff’s pain was not entirely mental in origin because the limited physical examination he conducted on plaintiff revealed muscle tension in the lower back on the right side. From this observation it was concluded that plaintiff indeed experienced pain as plaintiff contended.
Besides the testimony of Dr. Magruder, plaintiff introduced that of an acquaintance, Mary Patterson who has known plaintiff approximately five years and lives some three or four blocks distant from plaintiff. In essence she testified that she has seen plaintiff almost daily and has noted a marked change in plaintiff’s conduct since the accident. She stated that prior to the accident plaintiff worked regularly and never complained of pain whereas since the accident plaintiff has not worked, constantly complains of pain and remains at home most of the time.
As contended by counsel for plaintiff, the law of this state is settled to the effect that recovery of compensation benefits may be had for disability resulting from neurosis occasioned by an accident occurring within the scope and during the course of one’s employment. The authorities so holding recognize that nervousness, neurosis or emotional disturbances, induced by injuries sustained by a workman, can produce disability as effectively as physical or anatomical injuries. Tate v. .Gullett Gin Company, et al., La.App., 86 So.2d 698; Buxton v. W. Horace Williams Co., 203 La. 261, 13 So.2d 855; Dupre v.Wyble, La.App., 85 So.2d 119; Ladner v. Higgins, La.App., 71 So.2d 242.
Relying on Guidry v. Michigan Mutual Liability Company, La.App., 130 So.2d 513, and Williams v. Bituminous Casualty Corporation, La.App., 131 So.2d 844, plaintiff contends that since the testimony of his psychiatrist remains unrefuted in the record, it constitutes sufficient proof of plaintiff’s disability from neurosis. While we are in accord with the holding in the Guidry and Williams cases, supra, in view of the facts peculiar to those decisions, we nevertheless do not consider them decisive of the case at bar.
That each case must be decided in the light of its own peculiar facts and circumstances is a legal axiom so universally accepted no citation of authority in support thereof is deemed necessary. Equally well recognized is the principle that plaintiff must establish his case (even one for workmen’s compensation benefits) by a fair preponderance of credible evidence.,
Plaintiff herein was injured October 19, 1959, and the instant suit was filed January 14, 1960. In plaintiff’s petition no mention of disability from post traumatic neurosis is to be found. We note, however, a vague, general allegation in Article 7 of plaintiff’s complaint to the effect that plaintiff had sustained “serious and permanent injuries to his body and mind”. Insofar as said allegation refers to injury to plaintiff’s mind on the date the allegation was made, it was totally without foundation' considering at that time there was no evidence, medical or otherwise, indicative of neurosis. Insofar as it alluded to physical injuries, the allegation was virtually without foundation in view of the fact the only medical evidence then available (consisting of the reports of Drs. Woodford and Bannerman) appeared negative as to injury.
We further observe that on January 15, 1960, (the day following filing of this suit) Dr. Edelman’s report was issued and con *500 firmed those of the previously mentioned medical experts. . It was not until almost two months later, namely, March 4, 1960, that plaintiff was referred to Dr. Magruder for psychiatric evaluation.
Although we are aware that in at least one of the cases relied upon by learned counsel for plaintiff herein, compensation for disability induced by neurosis has been awarded on the uncontradicted testimony of a single psychiatrist, we are likewise cognizant of authority holding to the contrary under circumstances remarkably similar to those in the case at bar. A paramount difference between the Guidry and Williams cases, supra, relied on by plaintiff herein is that in both said instances the trier of fact decided the- issue in favor of the employee whereas in the case at bar the factual question was initially adjudicated adversely to plaintiff. We do not wish to be understood as taking issue with the propriety of the decision rendered by our brothers of the Second Circuit (in the Williams case, supra) or those of our brothers of the Third Circuit (in the Guidry case, supra) for we adhere to the principle that there can well be instances wherein the evidence as a whole may be considered sufficient to prove disability resulting from neurosis even though the record may contain the testimony of but a single psychiatrist.
We believe, however, the facts of the instant case more properly fall within the rule of Franklin v. Cashio, La.App., Ill So.2d 536 and Rowan v. Travelers Insurance Company, La.App., Ill So.2d 387, the former decided by this court against the employee despite the unrefuted testimony of a psychiatrist appearing in the record and the latter having been determined in favor of the employer by the Fourth Circuit (formerly Orleans) notwithstanding two psychiatrists were called by plaintiff and none by defendant employer.
The learned trial court awarded compensation to March 16, 1960, and (we believe) did so in order to lend credence t£> Dr. Magruder’s physical findings regarding the presence of muscle spasm. In so doing we are not prepared to say he committed manifest error especially in view of the liberal rule of interpretation prevailing in favor of a claimant under the compensation law of this state.
The final remaining issue is whether the lower court properly assessed penalties and attorney’s fees against defendant insurer for failure to pay compensation to plaintiff herein.
It will be recalled plaintiff’s accident occurred October 19, 1959, and the present suit was filed January 14, 1960. Under date of October 22, 1959, a report issued from the office of Dr. Shirley J. Woodford to defendant insurer stating that plaintiff could resume his regular employment on October 26, 1959 (one week following the accident). On the trial of the case it developed that Dr. Woodford did not sign the report but that rather it was signed and issued by her nurse whose duty it was to prepare such reports, affix the doctor’s signature thereto and forward same to the insurer. It further appeared upon trial that the date of October 26, 1959, (indicated in the report as the date upon which plaintiff could resume work) was also incorrect inasmuch as Dr. Woodford testified she did not order plaintiff to return to work until October 30, 1959. If the report were correct plaintiff was not entitled to any compensation whatsoever in view of the provisions of LSA-R.S. 23:1224 to the effect that compensation is not payable for the first week unless disability continues six weeks or longer.
The record clearly reflects defendant insurer relied upon the report mentioned which on its face appeared authentic in every respect. There is no evidence indicating defendant’s knowledge of the fact the signature of Dr. Woodford appearing thereon was in truth that of the doctor’s nurse. There is no evidence in the record indicat *501 ing that defendant insurer possessed any other medical reports or information regarding plaintiff’s condition prior to plaintiff’s institution of suit on January 14, 1960. An insurer cannot be held responsible for the manner in which a medical report is submitted unless it is apparent from the report itself (or from other information then available to the insurer) that the report is not authoritative and reliable. We concede the rule might be otherwise if it be shown the insurer possessed any substantial degree of control over the office operation of the party issuing the report (such as an instance wherein the doctor is the employee of the employer or insurer), however, such is not shown in the present case. On the contrary the record clearly established Dr. Woodford is a physician in private practice and defendant insurer is devoid of any control over her office or the.manner in which she conducts same.
The statutory provision imposing penalties and attorney’s fees for arbitrary, unreasonable and capricious withholding or refusal to pay workmen’s compensation benefits is subject to the rule of strict construction. Nichols v. Iowa Mutual Insurance Company, 232 La. 856, 95 So.2d 338; Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695.
In the numerous cases cited by plaintiff in which penalties and attorney’s fees were awarded in cases of this character, no bona fide dispute was found to exist regarding claimant’s disability. It further appears that in each such instance defendant was aware of the claimant’s disability and either ignored the fact or elected to dispute the duration and extent thereof and withhold payment of compensation pending the outcome of the contest. Defendant in the instant case had no such knowledge of disability, the contrary being indicated by the only medical evidence available to defendant at the time this action was filed.
For the reasons hereinabove set forth, the judgment of the trial court is affirmed insofar as it awards plaintiff compensation at the rate of $35.00 per week from October 16,1959, to March 16,1960, and-reversed insofar as it awards plaintiff statutory penalties and attorney’s fees against defendant American Insurance Company.
Amended and affirmed.