REID, Judge.
Plaintiff, Eli Molden, brought this suit against Louisiana Agricultural Supply Company, Inc., to recover workmen’s compensation benefits for injuries allegedly resulting in total and permanent disability, plus medical expenses in the amount'of $2500.00 arising from an accident which occurred on or about September 14, 1961. An explosion on that date occurred at Louisiana Agricultural Supply Company, Inc., in Baton Rouge, Louisiana'causing metal splinters to strike plaintiff in various parts of his body resulting in physical injuries which required hospitalization.
At the time of trial, counsel for both parties stipulated the only issue involved was the question of the continued disability of- plaintiff subsequent to the date of the last payment of compensation by defendant.
The Trial Judge rendered judgment rejecting plaintiff’s demands, finding that plaintift had failed to prove any disability existing after December 19, 1961. From; this judgment plaintiff appealed.
The record shows plaintiff was first examined by Dr. Charles McVea, a specialist in general surgery, who testified on behalf of defendant. The surgeon saw plaintiff at Our Lady of the Lake Hospital in Baton' Rouge on September 14, 1961, shortly after he had been injured in the explosion. He-testified plaintiff had suffered lacerations of his back and right calf and was hospitalized' for eight days. Dr. McVea treated plaintiff during 26- visits to the doctor’s office between September 25, 1961 and December-19, 1961. He testified that as of December-19, 1961 plaintiff was able to perform the-same type of work he had performed prior to the accident without any disability, whatsoever and, although plaintiff was uncomfortable through the period of treatment,he was not unduly upset or emotionally disturbed at that time. Dr. McVea further testified that he did not recommend psychiatric treatment for plaintiff. He stated' that at the time he' discharged plaintiff the-lacerations had healed and while there was some tightness in the scar on the back of his leg this did not prevent him from returning to work and it was possible plaintiff would continue to have some pain but it would be minimal and would not interfere with the performance of plaintiffs work. Dr. McVea concluded his testimony on direct examination as follows:
“Q: Did you have an opinion, Dr. McVea, as to whether or not, on December 19, 1961 Eli Molden was suffering from any disability which would prevent him from returning to the usual duties of *283 his work at Louisiana Agricultural Supply?
“A: No, sir.
"Q: You did have an opinion?
■“A; I did have an opinion that he was able to return to work.
■“Q: The lacerations had healed ?
■“A: Yes, sir.
■“Q: And were there any complaints ? Did Eli have any complaints which would tend to show that he was not in condition to return to work ?
“A: He had no complaints that would prevent him from working. He complained of some tightness in the scar on the back of his leg and he had some tight tissue in this area, but this did not prevent him returning to work.”
On cross examination Dr. McVea testified that although he was not qualified as ■a psychiatrist he had observed plaintiff and if the plaintiff had symptoms indicating psychiatric evaluation, he, Dr. McVea, would have recommended psychiatric treatment. Dr. McVea stated he was familiar with the type of work performed by plaintiff and, in his opinion plaintiff was able to return to that work.
Dr. J. Willard Dowell, an orthopedic •surgeon, was called as a witness on behalf •of plaintiff. He examined plaintiff on Janu.ary 18, 1962 and on May 17, 1962. He testified that at the time of his initial examination plaintiff complained of pain in the lumbar region of the back, his right calf in the area of the scar and in the back of his right knee. Plaintiff contended his right knee buckled on one occasion and he complained of numbness over the outer border of the right foot and occasional burning in the left shoulder. Dr. Dowell further testified that he was unable to find objective evidence of disability to plaintiff’s back as of January 18, 1962, although it was his opinion the patient was suffering some disability in his right leg. Dr. Dowell’s prognosis concluded, “I feel that he has recovered sufficiently to return to work. It is my opinion that it is too early to attempt any final evaluation on his right leg and I suggest deferring this for an additional two or three months.” Dr. Dowell re-examined plaintiff on May 17, 1962 and finding no objective evidence of disability in his back at that time, felt that he was still able to return to work. Relying upon plaintiff's complaints of pain Dr. Dowell concluded the patient had a disability of S'% to 10% in his right leg but described this type of disability as inflicting slight discomfort and some annoyance rather than impairing function per se. Dr. Dowell described the pain from which the plaintiff was suffering on each of the two occasions he treated him as insufficient to interfere with his activities, including his work.
Plaintiff was also referred to Dr. Charles P. Cracraft, an orthopedic surgeon of Baton Rouge, whose report, admitted by consent of counsel contained the following diagnosis and conclusion based upon his examination of January 31, 1963:
“DIAGNOSIS:
“1. By history, probable contusion of back, mild, healed.
“2. Laceration, back right lower leg, healed.
“3. Laceration, left shoulder, healed.
“CONCLUSION:
“This patient was injured at work 9-14-61, when struck by some pieces of flying metal. I can find no Orthopedic basis for his continued complaints. I believe that he can resume his regular activities, and that he has no permanent disability as a result of this accident.”
The Trial Judge found no conflict in the medical evidence which showed the plaintiff’s physical condition was such as to en *284 able him to perform his usual duties as a laborer after December 19, 1961.
Considering whether plaintiff is totally and permanently disabled by virtue of post traumatic neurosis we note, as is often the case, the plaintiff’s claim is based on the testimony of a single witness, in this instance, Dr. Sparkman H. Wyatt, a psychiatrist, who testified he saw plaintiff on four occasions, the first two for 45 minutes, the third for an hour and a half, and the fourth, on the day before the trial, for approximately 15 minutes. Plaintiff’s first visit was on March 5, 1962. Dr. Wyatt testified he had the benefit of Dr. McVea’s medical report. Dr. Wyatt examined plaintiff by interviewing him, noting his appearance and behavior and eliciting a history of plaintiff’s life prior to the accident. He diagnosed plaintiff as sulfering “post traumatic neurosis, conversion in type, manifested by subjective symptoms, mainly in the calf of the right leg, and by preoccupation with injury to that member.” He further testified that in his opinion as a psychiatrist plaintiff was unable to perform the work he had performed before the injury. In arriving at his opinion he considered the number of people injured in the explosion, the death of one person involved in the accident, the severity of the accident, the length of plaintiff’s hospitalization, and the subsequent treatment of his wounds for which the plaintiff made repeated trips to Dr. McVea’s office, the failure of the plaintiff to resume his employment despite lack of income after he had been pronounced able to return to work by Dr. McVea, plaintiffs belief that his employers were indifferent to his injuries as well as of others injured in the accident, the preoccupation with his limb, and the symptoms of pain and tingling and feeling numb, which latter two Dr. Wyatt stated were contradictory in that an area of the body cannot be numb and tingle at the same time. He further stated when a person speaks of a limb or a portion of the body as tingling and numb this complaint indicates the patient is preoccupied. It was Dr. Wyatt’s opinion that plaintiff was psychiatrically disabled and emotionally disturbed. Dr. Wyatt said his first two interviews were inconclusive, but as a result of the third interview of June 19, 1962, which lasted an hour and a half he elicited sufficient evidence to justify a psychiatric diagnosis. When he saw plaintiff immediately before the trial he talked to him for 15 or 20 minutes and in his opinion plaintiff was still psychiatrically disabled. He did not believe plaintiff was a malingerer but did state that secondary gain, in this case monetary compensation or personal attention, might aid in the recovery. He stated that this secondary gain was not the causation or motive for the neurosis but indicated a symptom of the neurosis. It was apparent from the testimony that Dr. Wyatt was of the opinion that most psychiatric terminology is meaningless to most people outside the field and neither counsel nor the Court was qualified to question his findings and judgment.
While Dr. Wyatt was impressed that plaintiff complained of numbness and tingling at the same time, Dr. Dowell testified that he found nothing inconsistent with such sensations as one might detect numbness with tingling as well as numbness without tingling.
Plaintiff testified he was reluctant to return to work because his back was bothering him, his head and his leg were bothering him and he was afraid to go back to his former place of employment for fear another explosion might occur. Other lay witnesses testified including plaintiff’s wife. However, their testimony as to plaintiff’s physical disability apparently was given little consideration by the Trial Judge. This cannot be said to be in error for where there is no conflict in the medical findings as to plaintiff’s disability, the medical findings should be taken as correct and should be given great weight. Guillory v. Southern Farm Bureau Casualty Ins. Co., 237 La. 374, 111 So.2d 314; Powell v. Liberty Mutual Insurance Co., La.App., 80 So.2d 902.
*285 The Trial Judge in his well written reasons for judgment summarized the evidence as follows:
“This Court is of the opinion that the testimony of Dr. McVea, who examined and treated this plaintiff from the date of the accident through December 19, 1961 and saw him some 26 occasions, must be given much weight. Although Dr. McVea does not pose as a psychiatrist, the Court is of the opinion that Dr. McVea would have noted any unusual behavior by plaintiff during those many examinations. We have in evidence the testimony of two practitioners, Dr. McVea and Dr. Dowell, both specialists in their field. Neither felt that the plaintiff was suffering from any disability of a physical nature. Dr. McVea found the plaintiff to be able to return to work on December 19, 1961. Dr. Dowell did not see this plaintiff until January 18, 1963, at which time he found plaintiff to be able to return to work and testified that he could find no injury of a disabling nature, and was of the opinion that none existed as of January 18. We must presume that there was no physical disability as of the date Dr. McVea found the plaintiff to be able to return to work, which was December 19, 1961. There is no conflict with the written opinion of Dr. Cracraft. The Court is, therefore left with the testimony of Dr. Sparkman Wyatt, a psychiatrist, as against the testimony of Dr. McVea, Dr. Dowell, and the statement of Dr. Cracraft. This Court is of the opinion that Dr. McVea was in a. much better position to form an opinion on both the physical and mental stability of the plaintiff,- during 26 examinations, than could a psychiatrist, in an hour and a half examination or conversation as the doctor termed it. Dr. McVea’s testimony is entirely convincing in this respect, and is back up by the testimony of Dr. Dowell and the statement of Dr. Cracraft.”
Plaintiff urges that the Trial Court was in error in giving weight to the testimony of Dr. McVea concerning psychiatric matters when in conflict with the opinion of the psychiatrist Dr. Wyatt and also in considering testimony of non-psychiatric medical witnesses against the testimony of a psychiatrist concerning an alleged psychiatric condition. However, it is the opinion of this Court that the conclusions of the Trial Judge cited above are in line with the jurisprudence established by this Court.
In the case Charleston v. American Insurance Company, La.App., 136 So.2d 495, when discussing this problem, this Court held:
“ * * * Although we are aware that in at least one of the cases relied upon by learned counsel for plaintiff herein, compensation for disability induced by neurosis has' been awarded on the un-contradicted testimony of a single psychiatrist, we are likewise cognizant of authority holding to the contrary under circumstances remarkably similar to those in the case at bar. A paramount difference between the Guidry and Williams cases, supra[1], relied on by plaintiff herein is that in both said instances the trier of fact decided the issue in favor of the employee whereas in the case at bar the factual question was initially adjudicated adversely to plaintiff. We do not wish to be understood as taking issue with the propriety of the decision rendered by our brothers of the Second Circuit (in the Williams case, supra) or those of our brothers of the Third Circuit (in the Guidry case, *286 supra) for we adhere to the principle that there can well be instances wherein the evidence as a whole may be considered sufficient to prove disability resulting from neurosis even though the record may contain the testimony of but a single psychiatrist.
“We believe, however, the facts of the instant case more properly fall within the rule of Franklin v. Cashio, La.App., 111 So.2d 536 and Rowan v. Travelers Insurance Company, La. App., 111 So.2d 387, the former decided by this court against the employee •despite the unrefuted testimony of a psychiatrist appearing in the record and the latter having been determined in favor of the employer by the Fourth 'Circuit (formerly Orleans) notwithstanding two psychiatrists were called by plaintiff and none by defendant employer.”
See also Walter Davenport v. Kaiser Aluminum & Chemical Corp., La.App., 146 So.2d 834, and Mouton v. Gulf States Utilities Company, La.App., 69 So.2d 147, wherein the Court held that the testimony •of a psychiatrist based upon two question and answer periods of 45 minutes each does not constitute proof of traumatic neurosis by clear preponderance of the evidence.
In the present case, balanced against the testimony of Dr. Wyatt was the testimony of Drs. Dowell and Cracraft, both recognized neurosurgeons, who testified they could find no objective medical symptoms which would explain plaintiff’s alleged disability, and of Dr. Charles McVea, a well recognized general surgeon who, as the treating physician, testified as of December 19, 1961 plaintiff was able to resume the same duties he performed prior to the accident.
The Trial Judge’s consideration of the opinion of the treating physician is in accordance with prior holdings of this Court. In the case of Kenny v. Schuylkill Products Co., Inc., La.App., 130 So.2d 696, this Court approved the holding of the Trial Court the treating physician, while not a specialist in the field of psychiatry, was, as the result of intimate contact with the plaintiff over a period of six months, in a better position to form an opinion on both the physical and mental stability of the plaintiff than a psychiatrist could possibly be after an hour and a half conversation (which was, by Dr. Wyatt’s own admission the same amount of fruitful time which he had spent with plaintiff herein as his first two examinations were not conclusive).
It is clear from an examination of the record the Trial Judge believed plaintiff had recovered as of December 19, 1961 and we are in accord therewith.
The Trial Judge’s conclusion as to the payments to be allowed for medical bills and expert fees is correct.
For the above and foregoing reasons the opinion of the Trial Court is affirmed.
Affirmed.

. Guidry v. Michigan Mutual Liability Company, La.App., 130 So.2d 513, and Williams v. Bituminous Casualty Corporation, La.App., 131 So.2d 844, relied upon by plaintiff. In all of these cases, in-eluding DeBoest v. Travelers Insurance Company, La.App., 138 So.2d 646, great weight is given the findings of the trier of facts.