CULPEPPER, Judge.
The plaintiff, Armogene Guidry, seeks workmen’s compensation benefits for total and permanent disability. He suffered an accident while working for the defendant, Chemical Construction Corporation, insured by Travelers Insurance Company. From an adverse judgment, defendants appeal.
The substantial issue is whether plaintiff’s disabling neurosis has a causal connection with the accident.
The accident happened on January 12, 1966. Plaintiff, an illiterate negro laborer, was shoveling mud from an excavation. As he threw a shovel full over his shoulder, some of the mud stuck to the shovel and caused a popping sensation in his right hand and wrist. He reported the accident to his employer and was taken to Dr. Wade H. Sigmon, Jr., a general practitioner in Gonzales, Louisiana, which is near the job site. This physician found only tenderness of the metacarpals and decreased. sensation of the thumb. He found no injury to the wrist and recommended that plaintiff return to work without any loss of time whatsoever. However, plaintiff did not go back to work. He went to his home in Opelousas, Louisiana.
On January 17, 1966, plaintiff went to Dr. Emil Ventre, a general practitioner in Opelousas. This physician found a sprain of the hand with slight swelling; and numbness of the thumb. Plaintiff also complained that he couldn’t move his wrist, a condition commonly called a “wrist drop”. This results from damage to the radial nerve, which runs down from the shoulder through the elbow to the wrist. From the history of the accident, Dr. Ventre could not understand how the radial nerve could have been injured as a result of throwing a shovel full of mud over the shoulder. Since the symptoms were so bizarre, he referred plaintiff to Dr. W. L. Meuleman, an orthopedic specialist of Lafayette.
Dr. Meuleman saw plaintiff on January 18, 1966. In describing the accident to Dr. Meuleman, plaintiff said that while shoveling dirt his wrist began to hurt and then his wrist “flopped down”. Of course, this history is contrary to the testimony of Dr. Sigmon that immediately after the accident there was no limitation of motion of the wrist. Despite plaintiff’s statement that he couldn’t move his wrist, Dr. Meule-man noticed that as plaintiff undressed he did use his wrist. It was Dr. Meuleman’s opinion that plaintiff had no damage to the radial nerve, no wrist drop and no disability on an orthopedic basis. However, the doctor did say that plaintiff had a glove-type anesthesia, which is a symptom of hysteria. This indicated the possibility of a neurosis.
Plaintiff then returned to Dr. Ventre on January 20, 1966. With the benefit of Dr. Meuleman’s report, Dr. Ventre diagnosed a mild sprain of the hand with psychotic overlay. He recommended that plaintiff return to work.
On January 26, 1966, plaintiff returned to Dr. Sigmon in Gonzales. He complained that he couldn’t move his wrist. This physician thought the plaintiff might actually have a wrist drop, but he said it could not have been caused by the accident. He referred plaintiff to Dr. Joseph A. Sabatier, Jr., a general surgeon with a large neurosurgery practice.
*401 Dr. Sabatier saw plaintiff for the first time on January 28, 1966. His initial opinion was that plaintiff actually had radial nerve palsy, i. e., a wrist drop. He explained that this condition results from impairment of the radial nerve which can be due to several causes. One cause is direct trauma, such as a hard blow to some portion of the arm, thereby injuring the radial nerve. This cause was ruled out because there was no history of such trauma. Another possible cause is exposure to certain chemicals, but there was also no history of this. A third common cause is infection, but there was no history or indication of such. A fourth general category is that to which no specific cause can be given. (Dr. Mueleman stated that one of these unknown causes could be a virus which attacks this particular nerve.) Being unable to ascribe a specific cause, Dr. Sabatier simply began to treat the condition because these patients usually recover in a few weeks or months. Plaintiff was given a brace to support his wrist and he showed gradual improvement. Finally, on April 26, 1966, Dr. Sabatier discharged plaintiff as recovered.
When asked whether there was any causal connection between the accident and the wrist drop, Dr. Sabatier said positively there was no connection on an anatomical basis. The next question was whether there was any causal connection between the accident and any psychic disability. Dr. Sabatier replied that since the physical impairment, i. e., the wrist drop, was not caused by trauma, then necessarily the psychic abnormality could not have been caused by the accident. He said the only connection between the accident and these later difficulties was temporal, i. e., the wrist drop and the ensuing psychic abnormalities occurred shortly after the accident.
On the request of his attorney, plaintiff was examined on May 20, 1966 by Dr. Homer D. Kirgis, a neurosurgeon at Ochsner Clinic in New Orleans. This physician found no impairment of the radial nerve. He recommended that plaintiff discard the wrist brace, which he was still wearing, and return to work. Dr. Kirgis corroborated all of the previous physicians who had stated the radial nerve could not be injured by shoveling dirt.
Plaintiff’s attorney then sent him to Dr. John A. Fisher, a psychiatrist in Lafayette. He saw plaintiff on June 10, 1966 and December 22, 1966. This physician read the reports of Drs. Kirgis, Sabatier, Meuleman and Sigmon. He took from plaintiff the history of the accident, the wrist sprain and the later development of the wrist drop. He found plaintiff in a condition of extreme depression, social withdrawal, feelings of hopelessness, loss of appetite, insomnia, diminished libido and irritability. Of course, he took information as to plaintiff’s background, activities, etc. Dr. Fisher’s diagnosis was “mixed psychoneurosis” which he explained as being a combination of different symptoms, such as depression, anxiety, hysteria, etc.
As to the crucial question of whether there was any causal connection between the accident and the neurosis, Dr. Fisher was equivocal. In one portion of his testimony he said plaintiff’s disabling neurosis was “precipitated by the accident.” He explained that plaintiff already had a “predisposition” to neurosis but the accident and the “wrist drop” were the triggering mechanisms.
However, in another portion of his testimony Dr. Fisher said:
“Q. What about his hand?
“A. I excluded his hand from my consideration of the problem because I am unable to tell whether this is a hysterical manifestation or whether he is malingering on that score or whether it might have an organic basis.
“Q. What brought about Mr. Guidry’s disability ?
“A. I don’t know.
*402 “Q. You don’t know?
“A. No.”
In a further portion of his testimony Dr. Fisher finally opined that the triggering cause of the neurosis was the wrist drop:
“Q. Do you know anything besides the wrist drop that prevents him from continuing to work?
“A. No.
“Q. In your mind, is that what brought about the disability, was the wrist drop ?
“A. May I think about that a second? Yes, I think right at the moment it is the wrist drop.”
Of course, the medical testimony shows conclusively that plaintiff could not have suffered a wrist drop as a result of the accident. This being true, it appears that Dr. Fisher’s opinion as to causal connection with the accident is based on an improper premise.
On the request of defendant, plaintiff was seen on September 14, 1966 by Dr. Thomas L. Rafferty, a psychiatrist in New Orleans. This physician took substantially the same history and found about the same depression, loss of libido, etc. as Dr. Fisher. Dr. Rafferty noticed that although plaintiff said he couldn’t move his wrist, he did use it during the examination for such things as to get up out of the chair, hand the doctor an envelope and put something in his pocket. This physician concluded that plaintiff can use his wrist when he wants to, and that he is not disabled insofar as the wrist is concerned. He said:
“Q. Now, was this man’s wrist drop present at all times?
“A. No, it was only present when his arm was in a resting position, when he had no reason to use the hand.
“Q. When he had reason to use it, did he use it?
“A. Yes, he used it without any limitation of motion.
“Q. Now, assuming that the man was a general laborer, and he was able to use this hand, would this be disabling if he could use the hand?
“A. No, it would not be disabling.”
Dr. Rafferty opined that although plaintiff had full use of his wrist, he was disabled by “post traumatic neurosis”, the principal symptom being depression. However, he also equivocates when he testifies :
“Q. Would the other symptoms that you determined and found here, assuming that the man could use his hand, were those symptoms such that they would be disabling?
“A. They could be, yes. This would depend upon how severe they were.
“Q. Now, in this particular man were they of such a degree that they were disabling?
“A. At the time that I saw Mr. Guidry, he was moderately depressed, and whether or not his symptoms then would be disabling would depend on the nature of the work he was trying to do.
“Q. Well, if he were going to try to do general labor—
“A. I think he probably could do that, yes. Sometimes the only way of determining whether or not disability exists because of emotional symptoms is to place a person in the job situation and see if he can do it.
“Q. So then we get down to the question of whether this man can use his wrist or not; is that correct, Doctor ?
“A. Yes.”
*403 There is no dispute as to the law. Of course, the jurisprudence is now settled that a claimant is entitled to compensation for neurotic disability causally related to an accident at work. Buxton v. W. Horace Williams Company, 203 La. 261, 13 So.2d 855. Generally, plaintiff must prove by a preponderance of the evidence, the same as in any other civil case, that his disability is causally connected with the accident. Speculation, conjecture and near possibility are not sufficient. Guillory v. New Amsterdam Casualty Company et al., 244 La. 225, 152 So.2d 1 (1963). Since a psychiatric disability is difficult for laymen to understand or accept, reliance must be placed on the testimony of psychiatrists. Goodley v. Brunet, 150 So.2d 804 (La.App., 3rd Cir.1963).
The evidence here is not sufficient to prove a causal connection between the accident and the psychiatric disability. In most cases of work-connected neurosis there was a severe injury, from which a psychiatric disability immediately ensued; or there was a genuine hysterical paralysis; and in all cases where recovery was allowed the psychiatric testimony was strong and unequivocal. Johnson v. Home Indemnity Co., La.App., 3 Cir., 146 So.2d 481; Deboest v. Travelers Insurance Co., La.App., 3 Cir., 138 So.2d 646; Doucet v. Ashby Construction Co., La.App., 3 Cir., 134 So.2d 665; Guidry v. Michigan Mutual Liab. Co., La.App., 3 Cir., 130 So.2d 513. Here, the injury was a slight sprain of the hand. The wrist drop, if any, was not caused by the accident. If there ever was a genuine wrist drop, it is now recovered. There is no hysterical paralysis of the wrist. Plaintiff can use it whenever he wants to. The testimony of the two psychiatrists is highly equivocal and uncertain. It falls far short of establishing a reasonable medical probability of causal connection.
For the reasons assigned, the judgment appealed is reversed and set aside. Judgment is now rendered in favor of defendants, dismissing plaintiff’s suit at his costs. All costs of this appeal are assessed against the plaintiff appellee.
Reversed and rendered.