252 So.2d 157 (1971)
Johnnie D. LUM, Plaintiff,
v.
TRI-STATE INSURANCE COMPANY, Defendant and Third-Party Plaintiff-Appellee,
TRADERS & GENERAL INSURANCE COMPANY, Third-Party Defendant and Appellant.
No. 11642.
Court of Appeal of Louisiana, Second Circuit.
June 22, 1971.
Rehearing Denied September 8, 1971.
Writ Refused October 28, 1971.
Bodenheimer, Jones, Klotz & Simmons, by J. W. Jones, Shreveport, for Traders & General Ins. Co., third-party defendant and defendant-appellant.
John P. Godfrey, Many, for Johnnie D. Lum, plaintiff.
Simon, Carroll, Fitzgerald & Fraser, by Richard A. Fraser, Jr., Shreveport, for Tri-State Ins. Co., defendant and third-party plaintiff, and appellee.
Before BOLIN, PRICE and HEARD, JJ.
PRICE, Judge.
The issue for review on this appeal is limited to the correctness of the trial court's determination that a workmen's compensation claimant, while working for a subsequent employer, suffered an additional accident which contributed to the disability originating from the prior employment. This matter reaches us by way of an appeal from the judgment in a third party demand involving the obligation of contribution between the insurers of the two employers as no appeal has been taken from the judgment in the principal demand awarding the claimant benefits for a total and permanent disability.
Johnnie D. Lum suffered an accident on May 20, 1968, while employed by the De *158 Soto Police Jury. In April, 1969, he filed suit against Tri-State Insurance Company, the compensation insurance carrier for the Police Jury, claiming benefits for total and permanent disability. The suit was tried on the merits in May, 1969, and left open for the taking of additional medical testimony. Prior to rendition of judgment by the court, a third party demand was filed by Tri-State, naming as defendants Traders & General Insurance Company, the compensation insurer of Nabors Drilling Company. In this demand Tri-State alleges Lum, while working for Nabors on November 5, 1968, suffered an additional accident which was an intervening or aggravating cause of Lum's disability, and for which Traders & General should be held solidarily liable should plaintiff be entitled to judgment, or in the alternative, liable for contribution of one-half of any amounts for which Tri-State is cast in this action.
Objections to the court's allowance of the filing of a third party demand at this stage of the proceeding were overruled and the trial judge ordered separate trials of the principal and incidental demands under the authority granted by LSA-C.C.P. art. 1038. The court rendered judgment on the principal demand, awarding Lum benefits for total and permanent disability and the maximum medical expenses allowed by the compensation statute.
Judgment was rendered on the third party demand, granting Tri-State judgment against Traders & General for one-half of all sums previously paid to Lum, and for one-half of all sums thereafter paid under the judgment rendered against it in the principal demand.
The only appeal taken from these judgments was by Traders & General which contends the trial judge erred in finding claimant suffered an accident while working for Nabors on November 5, 1968, which renders it liable for contribution to the third party plaintiff, Tri-State. By stipulation of the parties, the evidence previously taken on the principal demand of Lum against Tri-State was submitted to the court, along with additional medical testimony for resolution of the third party demand.
We believe the following to be a reasonable resume of the facts established by the evidence in the record of this case.
On May 5, 1968, Lum was working as foreman of a road crew for the De Soto Parish Police Jury. While driving a piece of mechanical equipment used for loading gravel, the front end bucket accidentally dropped and caught in a trench, causing the machine to come to an abrupt, unanticipated stop. Lum was first thrown against the steering wheel and then back against the rear of the seat. The breath was temporarily knocked from his body and he suffered pain in his stomach and low back region. He continued to have pain on the day of the occurrence which became more severe on the succeeding day, causing him to report the accident to the Secretary of the Police Jury. He was referred to Dr. Jack Grindle of Mansfield for examination and treatment. He was under treatment by Dr. Grindle primarily for low back pain until the latter part of July. Two or three days after the accident Lum reported back to work but testified he could not do any of the strenuous phase of the work he had previously performed. At about this same time a change occurred in the elected members of the Police Jury from the ward in which Lum worked and he was terminated solely because of political reasons.
He remained unemployed from May 31st until some time during the month of September when he began working for Nabors Drilling Company as a roustabout. On November 5th, shortly after reporting for work with Nabors, and while reaching into the bed of his pickup truck for a ball peen hammer, Lum had an onset of extreme pain in his back, requiring him to leave the job to go home and rest for the remainder of the day. The following day he reported for work, and during the course of the day *159 his left leg collapsed at a time when he was performing no labor whatsoever. Lum at this point had complete paralysis of his left leg and extreme weakness in his right leg, rendering him unable to stand.
After preliminary treatment by Dr. Grindle and Dr. James L. Zum Brunnen, an orthopedist of Shreveport, Lum was referred to Dr. Heinz Faludi, a neurosurgeon, for evaluation. Dr. Faludi immediately operated on Lum and found his paralysis to have resulted from a bone fragment compressed against nerve structures in the L-3 region of his spine. From the findings in connection with the surgery performed and the history given him of the accident occurring on May 20, 1968, and the subsequent complaints and restricted activities of Lum from that date until the onset of paralysis, Dr. Faludi concluded that Lum suffered a fracture of the L-3 lamina and facet in the May 20th accident. He further concluded that a fragment of bone resulting from this fracture remained loose and did not heal completely. Although this fragment responded somewhat to treatment received by Lum following the May 5th accident and more or less became benign in nature, in its loosened condition it remained a continuous threat to the nerve structure. Dr. Faludi was further of the opinion that sometime during the date of November 5th or 6th the fragment became dislodged and moved against the nerve structures of the cauda-equina, compressing them and causing the resulting paralysis and disability.
Tri-State seeks to have Traders & General declared solidarily liable under the theory that although the May 20th accident (while employed by the Police Jury) may have eventually resulted in complete disability to Lum, it had not as a fact caused disability until some further exertion or movement caused the fragment to be dislodged; that the exertion which caused this displacement was the twisting movement of Lum in reaching for the hammer in the pickup truck while employed by Nabors.
Traders & General urges the evidence does not sufficiently establish the hammer incident had any causal connection with the onset of paralysis and disability. It contends to only true accident happening to Lum was the incident of May 20th and that the medical testimony shows the displacement of the fragment could have resulted from ordinary and usual body movements and that the reaching for the hammer was in no way an unusual movement or strenuous exertion; thus the climax of symptoms manifesting themselves within plaintiff on November 5th and 6th could only be described as coincidental with being on the Nabors job and not resulting from any labor connected with that employment.
The trial judge found that although the May 20th accident was the prime cause of Lum's disability, he suffered an aggravation of this more or less dormant condition while employed by Nabors, and concluded both insurers were responsible for the disability.
A right of contribution clearly exists under the provisions of La.Civil Code Article 2103 and the holding in the case of Fontenot v. Great American Indemnity Co., 127 So.2d 822 (La.App.3d Cir. 1961) [and cases cited therein], if an additional accident was suffered by Lum while working for Nabors which had a causal relation with his disability. In Lum v. Employers Mutual Liability Insurance Co., 216 So.2d 889 (La.App.2d Cir. 1969), this court recognized the prior jurisprudential rule that an employee's disability is compensable when precipitated by an industrial accident, even though a pre-existing dormant condition or predisposition has contributed thereto.
We are of the opinion there is no manifest error in the conclusion reached by the trial judge in the judgment appealed from. If the facts of this case were changed in one respect to create a hypothetical situation with Lum having received the identical fracture in a manner not related to the job, and all remaining facts were identical, then we believe he would have been entitled to recover compensation benefits for a total and permanent disability had he filed suit against Nabors.
*160 Lum testified the reason he did not file suit against Nabors or his insurer was because he did not suffer any injury while working for that employer. However, it is significant that in the history given to both Dr. Grindle and Dr. Zum Brunnen, and to an insurance adjuster for Tri-State, Lum made mention of the hammer lifting incident. Also each of the several co-workers who testified recalled this same incident, although it occurred on November 5, 1968, and their testimony was not given until May, 1969. Such a trivial movement of a co-worker would not ordinarily be recalled by others unless it were in some way connected with a sufficiently serious incident to instill it in their memory.
We believe the preponderance of the evidence shows that although Lum had sustained a serious injury to his back by the May 5th accident and was prone to become a paraplegic requiring surgical relief therefor at some time in the future, he was nevertheless performing heavy manual labor from September to November 5th, when the acute onset of pain began which almost immediately rendered him totally disabled.
Four of the five medical experts who testified in the case were of the opinion the displacement of the bone fragment would have been a rather sudden occurrence bringing on considerable pain and paralysis almost immediately after compression of the nerve structures commenced. This conclusion lends credence to the assumption the displacement occurred simultaneously with whatever movement Lum made to obtain the hammer from the truck as that is the time we believe the evidence establishes he began to complain of very severe pain.
We do not attribute much significance to the statement of Dr. Faludi that he did not consider such a movement an "accident." He admitted his definition of an accident was from a medical or lay viewpoint and that he was not familiar with the meaning of this term as developed by the courts in connection with interpretation of the compensation statute. We think Dr. Faludi only stated that this type of movement was no more strenuous than the usual movement of everyday living.
In Roberson v. Michigan Mutual Liability Co., 90 So.2d 465, 469 (La.App.2d Cir. 1956), this court stated:
"The jurisprudence is now well settled that, to constitute an accident within the meaning of the Workmen's Compensation Statute in cases where the work of the employee requires physical effort and exertion, it is not necessary that the injury from which disability follows be the result of unusual physical effort if a diseased organ gives way or its function is impaired while the laborer is discharging his usual and customary duties and disability results, for it to be compensable."
It is elementary that employers take employees as they find them. Lum v. Employers Mutual Liability Insurance Co., supra. If the employee is in such a weakened condition that ordinary stress which would not hurt a well person caused a breakdown of an organ or body member which results in disability, then the injury is compensable.
We are of the opinion there is no manifest error in the conclusion reached by the trial judge. For the foregoing reasons the judgment appealed from is affirmed at appellee's cost.
Before AYRES, BOLIN, PRICE, HEARD and HALL, JJ.
PER CURIAM.
Traders & General have complained in application for rehearing that the judgment appealed from orders contribution by it to Tri-State for all sums paid to Lum under the judgment in the original action which begins Lum's period of disability on May 20, 1968, although Lum was not injured in his employment with Nabors until November 6, 1968.
*161 We agree with the position of appellant that contribution should only be made for those sums paid by Tri-State to Lum for weekly benefits accruing after the date of November 6, 1968, and the judgment appealed from is so amended and, as amended, affirmed.