282 So.2d 600 (1973)
L. D. GUILLORY, Plaintiff-Appellee,
v.
TRAVELERS INSURANCE COMPANY, Defendant-Appellant.
No. 4219.
Court of Appeal of Louisiana, Third Circuit.
August 20, 1973.
Motion Denied September 14, 1973.
Rehearing Denied September 14, 1973.
Writ Granted November 28, 1973.
*602 Camp, Carmouche, Palmer, Carwile & Barsh by Robert P. Hogan, Lake Charles, for defendant-appellant.
Baggett, Hawsey, McClain & Morgan by William B. Baggett, Lake Charles, for plaintiff-appellee.
Before SAVOY, HOOD and CULPEPPER, JJ.
HOOD, Judge.
This is a workmen's compensation suit instituted by L. D. Guillory against Travelers Insurance Company, the defendant being the insurer of plaintiff's former employer, Combustion Engineering, Inc. Judgment was rendered by the trial court in favor of plaintiff, awarding him compensation benefits based on total and permanent disability, plus medical expenses, penalties and attorney's fees. Defendant has appealed.
The issues presented are: (1) Was plaintiff unreasonable in refusing the tender of surgery made by defendant? (2) Is Travelers liable for expenses incurred by plaintiff for physical therapy treatments? (3) Should defendant be condemned to pay penalties and attorney's fees? (4) Is Travelers entitled to credit for compensation benefits paid to plaintiff by other compensation insurers, because of subsequent injuries sustained by plaintiff while working for other employers?
Guillory was injured on August 12, 1971, while working for Combustion Engineering, Inc. A heavy board fell on him on that date, striking the left side of his head and his left shoulder. His injuries consisted of comminuted fractures of the left clavicle, a fracture of the left distal acromium, multiple contusions about the shoulder, neck and upper back, and a scalp laceration.
*603 Plaintiff was hospitalized and treated for about one week immediately after that accident occurred. Following his discharge from the hospital, he continued to receive medical treatment on an outpatient basis until February 9, 1972, when he was discharged by his treating physician, Dr. William Akins, as being able to return to work.
Dr. Akins examined plaintiff again on March 13, 1972, because of his complaints of continuing pain, and he determined at that time that the broken pieces of the collarbone had healed into two major fragments, but that there was no union between those fragments. He stated that such a condition can cause significant pain. He concluded that Guillory was disabled, and he recommended that he submit to surgery for the excision of the outer portion of the collarbone, from the site of the non-union of the fracture to the outside portion of the shoulder. Substantially the same type of surgery was recommended by another doctor who examined plaintiff later at the request of defendant.
The recommended surgery was tendered to plaintiff by Travelers on July 24, 1972, and on at least three other occasions shortly after that date. Guillory refused to submit to surgery, however, and upon application of defendant a rule was issued directing plaintiff to show cause why he should not be ordered to submit to the recommended surgery, under the penalty of forfeiting his right to further compensation benefits, with a credit to be allowed Travelers for compensation benefits paid from July 24, 1972, to date. That rule was referred to the merits and in due course the case was tried.
The trial judge concluded that Guillory was not unreasonable in refusing to submit to the recommended surgery. Defendant contends that the trial judge erred in reaching that conclusion.
In Desormeaux v. American Mutual Liability Insurance Co., 224 So.2d 198 (La.App. 3 Cir. 1969), we held that the following test should be applied in determining whether an injured employee should be required to submit to surgery, under penalty of forfeiture of compensation benefits:
(1) Can the treatment or surgery reasonably be expected to relieve the disability?
(2) Will it cause the claimant a minimum of danger to his life and a minimum of pain?
(3) Is there substantial agreement among all medical witnesses as to the necessity of the treatment or operation and the possibility that the disability will be cured without reoccurrence?
The record contains the testimony of three doctors who examined or treated plaintiff, all of whom are orthopaedic surgeons. They agree that plaintiff is disabled and that the surgery which was recommended is an accepted procedure for correcting or improving plaintiff's condition. The operation would have to be performed under a general anesthetic, but the doctors feel that the patient would be subjected to very little risk except that which is involved in performing surgery and in administering an anesthesia. All three of the medical experts also feel, however, that plaintiff will continue to have some pain and some disability following the performance of surgery, and they differ in their views as to whether plaintiff will be able to return to his former work, even if the operation is a success.
Dr. Akins does not classify the operation which he recommended as major surgery, although he states that it would be painful to plaintiff, and that he would continue to have some pain and weakness after the surgery. He feels that if the operation is a success, plaintiff would be relieved of from 90 to 95 percent of his present pain, but that he would have some restriction of motion and some reduction in strength of the shoulder. He estimated that plaintiff would have a resulting partial disability of *604 from 10 to 15 percent, assuming that the surgery would be successful. He stated that he "certainly could not guarantee within medical certainty whether the patient could become a high rigger again."
Dr. J. W. Ambrister, who examined plaintiff on June 6 and on July 14, 1972, considered the operation to be major surgery, and he felt that it would be moderately painful to plaintiff. In his opinion, however, 85 percent of these operations are successful. He felt that plaintiff now has a 20 percent disability, and that after the operation he would have a permanent disability of about 10 percent. He feels that if the surgery should be successful, plaintiff would be able to resume his work as a boilermaker.
Dr. Norman P. Morin considered the recommended surgery to be of a major nature, and he feels that there is a substantial element of uncertainty as to whether it would be successful. With reference to the proposed operation, he stated that, "It could certainly relieve a great bit of the pain, but on the other hand it's possible that it may not relieve much at all," and that "I am not so sure in my own mind that it would help him markedly; I feel rather certain we would help him some, but certainly not markedly."
The varying opinions expressed by these examining and treating physicians indicate to us that there is not substantial agreement among all the medical witnesses as to the possibility that plaintiff's disability will be cured by means of the recommended surgery. We think the operation must be classified as major surgery, and that it will be accompanied by more than a minimum of pain. Under all of those circumstances, we agree with the trial court that plaintiff was not unreasonable in refusing the surgery which was tendered to him.
Guillory received physical therapy treatments at St. Patrick's Hospital, in Lake Charles, from February 2 to February 18, 1972, and the hospital submitted a bill in the amount of $162.00 for those treatments. Defendant has refused to pay this expense, because it contends that the treatments were administered for "tension headaches," having no relationship to the accident which occurred on August 12, 1971.
The therapy treatments were prescribed by Dr. William F. Foster, a neurologist to whom plaintiff was referred by Dr. Akins. Dr. Foster reported that on February 1, 1972, plaintiff complained of frequent pain in his left shoulder and daily headaches in the suboccipital area. He recommended physical therapy, and in his formal report to plaintiff's attorney he stated, "I did recommend that he take out-patient physical therapy as this may improve the `tightness' in his neck over the past three weeks. These appear to be `tension headaches'." In a later report the doctor stated, "I do not believe that this patient's headaches were related to his shoulder injury..." On the basis of those reports, defendant contends that the physical therapy treatments were administered to plaintiff for conditions not caused by a workrelated accident.
The record shows that Dr. Akins referred plaintiff to Dr. Foster because of plaintiff's complaints of headaches. In his report to plaintiff's attorney, Dr. Akins stated that "his headaches were capatible with his injury." Dr. Morin testified that since the muscles of plaintiff's neck were not functioning properly "they will go into spasm and pain will result." Dr. Foster prescribed the physical therapy to improve the "tightness" in plaintiff's neck, and we are not convinced that by the other statements in his reports he meant that there was no connection between that condition and the accident. We believe that the "tightness" he mentioned was the same condition which Dr. Morin referred to as "spasm."
The evidence convinces us that the pain which plaintiff was suffering, and for which the physical therapy was prescribed, was causally related to the accident. We *605 find no error, therefore, in that part of the trial court's judgment which awards plaintiff the expense he incurred in obtaining the physical therapy treatments.
We turn now to the question of whether the trial court abused its discretion in awarding plaintiff penalties and attorney's fees.
The record shows that Travelers paid workmen's compensation benefits to plaintiff at the rate of $49.00 per week for 25 consecutive weeks, commencing August 19, 1971, and ending February 3, 1972. The payment of weekly benefits was resumed as of July 14, 1972, and they have been paid regularly since that date. Defendant has never paid the compensation benefits which were due for the period beginning February 3, 1972, and ending on July 14, 1972.
Dr. Akins, plaintiff's treating physician, sent a written report to Travelers on January 24, 1972, stating that plaintiff could return to work. On February 9, 1972, defendant's supervisor of workmen's compensation claims contacted Dr. Akins by telephone and was informed by Dr. Akins at that time that plaintiff had recovered and was able to return to his regular employment, although the doctor stated in that telephone conversation that a decision would have to be made about four months later as to whether surgery would be performed. On the basis of those reports, defendant discontinued the payment of compensation benefits to plaintiff on February 3, 1972.
This suit was instituted on February 23, 1972.
Dr. Akins examined plaintiff again on March 13, several days after the suit had been filed, and he found at that time, contrary to his earlier findings, that plaintiff was still disabled. He reported this last finding to counsel for plaintiff on March 21, 1972, and plaintiff forwarded a copy of that letter to defendant a few days later. This last report from Dr. Akins, advising that plaintiff was still disabled, was received by Travelers about the first of April.
On May 31, defendant requested that plaintiff submit to an examination by Dr. Ambrister, and that request was refused by Guillory. Upon application of defendant, a rule was issued on that same day directing plaintiff to show cause why he should not be compelled to submit to the examination, and after a hearing the rule was made absolute. Dr. Ambrister attempted to examine plaintiff on June 6, but was unable to do so because plaintiff had sustained a serious injury to his left hand on May 26, 1972, for which he had been hospitalized, and his left hand and arm were in a plaster cast on June 6, that being the time scheduled for the examination. Plaintiff then was confined in the Central Louisiana Hospital, in Pineville, for about three weeks beginning June 13 or 14, 1972. For those reasons Dr. Ambrister was unable to complete his examination of plaintiff until July 14, 1972. On the last mentioned date, Dr. Ambrister found that plaintiff was disabled, and defendant thereupon promptly resumed the payment of weekly benefits.
The trial judge found that Travelers was arbitrary in not resuming payments promptly after it received Dr. Akins' last report about April 1, 1972. He also concluded that there was no justification for defendant's failure to pay benefits from February 3 to July 14, 1972. For those reasons he condemned Travelers to pay penalties and attorney's fees.
Defendant contends that its delay in resuming compensation payments was justified for several reasons. One is that plaintiff sustained at least three other accidental injuries shortly after August 12, 1971, one being the above mentioned hand injury. Two of these injuries occurred between the time defendant received Dr. Akins' last report that plaintiff was still disabled, and the time plaintiff was examined by Dr. Ambrister. During that period, plaintiff was being examined and treated *606 by other physicians for his new injuries, and the duration of his disability from each of the other accidents was uncertain. And, for a period of about three weeks in June and July, 1972, he was confined to the Central Louisiana Hospital.
We feel that defendant was justified in refusing to resume the payment of compensation benefits until it could have plaintiff examined by another physician, and under the circumstances which existed at that time we do not believe that the delay of about two months in requesting such an examination was unreasonable. We, however, prefer to base our decision as to this issue on another ground.
Our law is settled that an award of statutory penalties and attorney's fees against a defendant insurer for failure to pay workmen's compensation to the claimant is not proper where the medical evidence available to the insurer at the time the suit was filed showed no disability. LSA-R.S. 23:1224; Charleston v. American Insurance Co., 136 So.2d 495 (La.App. 1 Cir. 1961); Square v. Liberty Mutual Insurance Co., 270 So.2d 335 (La.App. 1 Cir. 1972).
In Square v. Liberty Mutual Insurance Co., supra, the Court of Appeal, First Circuit, said:
"Plaintiff's assertion that he is entitled to penalties and attorney's fees is without merit. All the medical evidence available to defendants at the time suit was filed showed that plaintiff was released to full duty."
In the instant suit, all the medical evidence which was available to defendant Travelers at the time this suit was filed showed that Guillory had recovered from his injuries and was able to return to full duty. It was not until after this suit was filed that additional medical reports showed that he was disabled. Under the above cited jurisprudence it is apparent that plaintiff is not entitled to recover penalties and attorney's fees.
We are aware of the fact that defendant has failed to pay the compensation benefits which were due plaintiff from February 3 to July 14, 1972. We nevertheless find that defendant is not liable for penalties and attorney's fees for two reasons. First, under the above mentioned rule, plaintiff is precluded from recovering such penalties and fees, since all of the medical evidence available to defendant at the time suit was filed showed that plaintiff was able to return to work. And, second, we find that defendant was not arbitrary and capricious in failing to pay such benefits until the case could be tried, because the evidence indicated to defendant that plaintiff had worked as a boilermaker for other employers after August 12, 1971, that he had sustained injuries as the result of two work-connected accidents after that date, and that he was receiving or was claiming compensation benefits for alleged disabilities resulting from those injuries.
Plaintiff points out, however, that defendant has never paid the compensation benefit due for the first week of his disability, and he argues that penalties are due because of that failure. The record does not show that a demand was ever made for that payment, or that the failure to pay was ever called to defendant's attention, or that defendant's failure was due to anything other than oversight. The record does show that although all of the medical evidence available to defendant indicated that plaintiff could return to work on January 24, 1972, Travelers nevertheless continued to pay compensation until February 3 of that year, so that plaintiff actually received all of the compensation benefits which reasonably appeared to be due him when the suit was filed.
Our Supreme Court held in Eaves v. Louisiana Cypress Lumber Co., 253 La. 741, 219 So.2d 771 (1969), that "penalties and attorneys' fees in compensation cases can be assessed only when the employer arbitrarily refuses to pay compensation benefits after he is put on notice that the employee is claiming that they are due."
*607 Penalties are stricti juris and should be enforced only in those instances where the facts negate good faith or just cause in connection with the failure or refusal of the insurer to pay the benefits which are due. Hebert v. South Louisiana Contractors, Inc., 238 So.2d 756 (La.App. 1 Cir. 1970); Chase v. Warren Petroleum Corp., 168 So.2d 861 (La.App. 2 Cir. 1964).
Under the circumstances presented here, we do not feel that defendant was arbitrary or capricious in its failure to pay the compensation benefits due plaintiff for the first week immediately following the accident, or in delaying the payment of the other unpaid benefits claimed by plaintiff until a judicial determination of that claim could be made. Our conclusion is that the trial court erred in assessing penalties and attorney's fees against defendant, and that the judgment appealed from must be amended to delete the award of such penalties and fees.
Defendant contends, finally, that it is entitled to credit for compensation benefits paid to plaintiff by other employers, or their insurers, because of injuries which plaintiff sustained after August 12, 1972.
The record shows that plaintiff sustained an injury to his lungs on November 3, 1971, while working as a boilermaker for Vincent Construction Company. He engaged an attorney (other than his counsel in the instant suit), and suit was filed for compensation benefits resulting from that injury. Plaintiff was paid compensation benefits for that injury at the rate of $49.00 per week from November 3, 1971, to March 2, 1972, and the record indicates that the above mentioned suit for additional compensation benefits was still pending at the time the instant suit was tried. During a part of the time Guillory was receiving benefits because of his lung injury, he also was receiving compensation payments in the same amount per week from defendant in this suit because of the shoulder injury which he previously had sustained.
On April 3, 1972, Guillory sustained another injury while he was working as a boilermaker for "Industrial." That injury consisted of a strain of his already injured left shoulder. Dr. Morin estimated that plaintiff's disability as a result of that accident would extend over a period of eight or ten weeks. Plaintiff received a payment of $600.00 on September 26, 1972, in settlement of his claim for workmen's compensation benefits resulting from that injury. Defendant contends that since plaintiff was involved in three separate compensable accidents while working as a boilermaker, involving three different employers, the employers should be held to be liable in solido for the compensation benefits which would be due for a single accident or injury, and that they should be condemned to pay that benefit on a pro rata basis. It argues that Travelers is entitled to credit for all compensation which it has paid to plaintiff, plus credit for 50 percent of all of the weekly benefits paid by it to Guillory from November 3, 1971, through February 3, 1972, plus a credit of an equal percentage against the $600.00 he received as a compromise settlement after April 3, 1972. Travelers also argues that if plaintiff recovers additional benefits in the above mentioned pending suit, then the liability of Travelers in this case should be limited to a pro rata share of the compensation benefits to which plaintiff would be entitled for one accident.
Our law is settled that if a claimant sustains injuries as the result of two separate accidents, while working for different employers, and both of those accidents contribute to his present disability, then the two employers are liable in solido for the compensation benefits due the employee for that disability. The benefits due the claimant under those circumstances, of course, could not exceed the maximum provided for one accident or one injury, and the amount due him would have to be pro rated between the two employers or their insurers. Pender v. National *608 Fire and Marine Insurance Co., 255 So.2d 95 (La.App. 3 Cir. 1971); Carter v. Tri-State Insurance Co., 259 So.2d 433 (La.App. 2 Cir. 1972); Lum v. Tri-State Insurance Co., 252 So.2d 157 (La.App. 2 Cir. 1971).
We recognized that rule in Pender v. National Fire and Marine Insurance Co., supra, but we concluded in that case that the second accident had not contributed to the plaintiff's disability, and that the two employers, or their insurers, thus were not solidarily liable for compensation benefits.
The evidence in the instant suit convinces us, as it did the trial court, that plaintiff is totally and permanently disabled as a result of the accident which occurred on August 12, 1971, and that the injuries which he sustained after that date, although painful and temporarily disabling, did not contribute to his present disability. The issue presented in this case thus does not fall under the above stated rule. We have been referred to no jurisprudence where the precise issue presented here was considered.
We have decided, however, that we could not grant defendant's demand for credit or contribution in the instant suit, assuming that there is merit to its claim, because neither of plaintiff's former employers, Vincent Construction Company or "Industrial," or their insurers, are parties to this suit. The plaintiff did not name them as defendants, they have not intervened, no third party actions have been filed against them, and they have not been impleaded in any other way. The record in this case does not disclose what the issues are or may be in the pending suit which plaintiff has filed arising out of his second accident. We cannot determine from this record whether the defendant in the other pending suit is liable to plaintiff for any compensation benefits at all, and even if we did conclude that there was liability we could not order that the payments be made on a pro rata basis or that there be contribution between employers, when two of the three employers involved are not parties to this suit. We thus find no error in that part of the judgment of the trial court which rejects defendant's demand that it be allowed credit for a part of the compensation payments it made and credit for a part of a compensation settlement which plaintiff received from another employer.
We do not mean to hold in this case that an injured employee may recover compensation benefits based on total and permanent disability from two different employers at the same time, because of two separate disabling injuries. We express no opinion at all as to that issue. See "Multiple Total and Permanent Disabilities in Louisiana Workmen's Compensation," 20 La.L.Rev. 109. We have not considered defendant's claim for credits here simply because the other employers involved were not parties to the suit.
For the reasons assigned, the judgment appealed from is amended by deleting the awards of penalties and attorney's fees to plaintiff. In all other respects the judgment of the trial court is affirmed. The costs of this appeal are assessed to defendant-appellant.
Amended and affirmed.

MOTION TO DISMISS THE APPEAL
HOOD, Judge.
Plaintiff-appellee filed this motion to dismiss the appeal of the defendant-appellant on the grounds that the defendant had voluntarily acquiesced in the judgment of the trial court.
The judgment appealed from was read and signed by the trial judge on January 27, 1973. In that decree the trial court awarded plaintiff workmen's compensation *609 based on total and permanent disability, and penalties and attorney's fees. Defendant moved for and was granted a devolutive appeal on February 9, 1973, and it posted the required appeal bond on February 26, 1973.
Plaintiff alleges in its motion to dismiss that on or before February 26, 1973, defendant sent to the plaintiff's attorney a draft for $2,890.74, representing $2,500.00 attorney's fees, $162.00 for a hospital bill, and $135.24 covering the 12 percent penalties, and interest on past-due installments, totaling $93.50. On March 5, 1973, Travelers sent to the plaintiff's attorney another check for $1,127.00, covering 23 weeks back compensation.
The appeal record was lodged in this Court on March 6, 1973, and on June 7, 1973, the case was argued and submitted. We rendered judgment on August 20, 1973, affirming the judgment of the trial court insofar as it awarded benefits to plaintiff, but we deleted from that judgment the award of fees. On August 31, 1973, plaintiff filed in this Court an application for rehearing, and at the same time he filed the motion to dismiss the appeal which is before us now.
We have decided that the motion to dismiss the appeal was not timely filed and that the motion must be denied.
Article 2085 of the Code of Civil Procedure provides in part, that:
"An appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him." (Emphasis added).
According to the allegations of the mover, there had been no acquiescence in the judgment before or at the time the appeal was "taken," and the defendant thus was not precluded by Article 2085 from taking an appeal at that time.
LSA-C.C.P. art. 2161 provides that, except as provided in Article 2162, a motion to dismiss an appeal must be filed within three days of the return day or the date on which the record on appeal is lodged in the appellate court, whichever is later. In this instance the motion to dismiss the appeal was filed long after this delay had elapsed, and none of the circumstances provided in Article 2162 exist here.
In McMahon Louisiana Practice, 1956 Supplement, note 26.3, at page 198, there appears the following statement:
"When the motion to dismiss strikes at the very foundation of the right to appeal, or raises a jurisdictional question, it need not be filed within these three days, but only prior to the appellate court's decision." (Emphasis added).
The motion to dismiss which is before us now does not strike at the foundation of the right to appeal, nor does it raise a jurisdictional question. But, even if it did, the motion was not timely filed since it was not submitted until after the appellate court's decision.
Having concluded that the motion to dismiss must be denied because it was not timely filed, it is unnecessary for us to consider defendant's contention that the payments which it made were subject to its rights under the appeal which it previously had taken.
For the reasons assigned, the motion to dismiss the appeal is denied.
Motion denied.