404 So.2d 945 (1981)
Frank T. CACIOPPO and Bennie L. Ippolito
v.
TANGIPAHOA PARISH SCHOOL BOARD.
NO. 81-C-0869.
Supreme Court of Louisiana.
September 28, 1981.
*946 Cyrus J. Greco, Leu Anne Lester Greco, of Law Offices of Cyrus J. Greco, Baton Rouge, for plaintiff-applicant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Duncan Kemp, Dist. Atty., Gail K. Sheffield, Abbott J. Reeves, Asst. Dist. Attys., for defendant-respondent.
DIXON, Chief Justice.
The United States Congress donated land to Louisiana and other states for public educational purposes. 43 U.S.C. § 871a. Known as "Sixteenth Section" lands, they were sold to parish school boards to be used for educational purposes. R.S. 41:631. It is the policy of the Tangipahoa Parish School Board to deposit Section Sixteen revenue into its general fund. The board keeps a record of how much Sixteenth Section revenue is produced by each ward, and disburses the funds exclusively to the schools within the ward that produced them.
Plaintiffs live in a ward that does not have Sixteenth Sections. They asserted this policy was contrary to R.S. 17:59, 30:154 and 41:718, and sought injunctive relief to prevent defendant from disbursing these funds. Plaintiffs alternatively prayed for a writ of mandamus directing defendant to credit all Sixteenth Section revenues to its general fund for the equal benefit of all schools within the Parish of Tangipahoa.
The trial court granted a temporary restraining order because the funds were nonrecurring revenue, and if spent they could not be replaced out of the general fund. The trial judge disagreed with the policy of the board, but dissolved the temporary restraining order, finding no violation of state law. The Court of Appeal affirmed, and held the policy to be within the board's discretion. 396 So.2d 344 (La.App. 1st Cir. 1981).
The record consists of a stipulation of facts between the parties and testimony of the plaintiffs, whose opinions are that the schools in their ward are deteriorating. Plaintiffs have asserted the board has no reason to maintain separate accounts except to provide advantages to the schools in those wards. Although there was a possibility that separate accounts might have been kept to show that there was an equal distribution of the total income throughout the parish, the board stipulated that its policy is to spend Section Sixteen funds exclusively for schools in the wards from which they originate, and that the funds "are treated as though they constitute separate funds of the respective wards in which the particular Sixteenth Section lands generating said funds are located." The only reasonable inference to be drawn from this policy, and the practice of maintaining separate accounts, is that the board wishes to *947 provide an advantage to schools in wards where the Sixteenth Sections lie.
The following statutes govern the treatment of Sixteenth Section funds:
R.S. 17:59 provides:
"The general school fund of the parish school boards shall consist of the state public school fund, police jury appropriations, and such other school funds as many be provided in the constitution or other laws of the state, except such as are appropriated or designated for special purposes.
No special advantage shall be given out of the general school funds to the high schools. Buildings, additions to buildings, repairs, supplies, sites, and equipment may be provided out of the general funds. Communities desiring better facilities and longer sessions than can be provided by a distribution of the general funds giving equal session to all schools shall secure the same by voting special taxes or obtaining funds from other sources than the public or the general school funds."
R.S. 30:154 C and D states:
"C. In all cases where sixteenth section or school indemnity lands are leased, either by the State Mineral Board or the school board, all funds realized from these leases shall be paid to the school board of the parish where the lands are situated and credited to the current school fund of that parish, except that in the case of school indemnity lands, the lease shall be made by the State Mineral Board only and the funds credited to the parish school board entitled thereto.
D. In all cases where title to land exclusive of sixteenth section or school indemnity lands has been acquired by a school board for the benefit of a particular school or school district, funds realized from a lease of such lands either by the school board or the mineral board, shall be paid to the school board. The school board shall credit these funds to a special account and apply them to the uses of the particular school for whose benefit the grant was made.
If the particular school specified in the grant no longer exists, the funds shall be placed in the general fund of the school board."
R.S. 41:718 A provides:
"A. In all cases of the lease of sixteenth section school lands, or of the sale of the timber thereon, the cash payment after deducting sufficient amount to cover the actual expenses incurred by the election and making the sale or lease, shall be credited to the account of the current school fund of the parish where the sixteenth section school lands are located. Notes representing deferred payments shall be placed in the hands of the parish school treasurer for collection, and when collected also credited to the current school fund of the parish, to be used for general school purposes."
The requirements are that Sixteenth Section funds be deposited into the current school fund, and be used for general school purposes. "General school purposes" is left to the discretion of duly elected school boards, but the policy of this board to disburse Section Sixteen funds to the wards that generated them is contrary to their discretionary use. The spending is not based on needs of parish schools, or general school purposes, but is based solely on the fact the funds were generated within a certain ward. This policy is inconsistent with that of R.S. 17:59 and 41:718, requiring funds to be spent on general school purposes.
Article XII, § 15 of the Louisiana Constitution of 1921 provided that "... funds shall not be subdivided, apportioned or separated in any manner whatsoever, nor shall they be paid to any ward, district, or other subdivision, but such revenue shall be dedicated and used exclusively, to pay the cost of the current operation of ... schools within the parish ... as provided for by the laws of the State." (Emphasis added). The relevant provisions of both R.S. 30:154 and R.S. 41:718 were in effect during the life of the Constitution of 1921. This constitutional provision prohibited what the Tangipahoa Parish School Board is now doing. It *948 was eliminated, however, from the 1974 Constitution, and was not placed in the Revised Statutes. The statutes remained in effect, however, and no legitimate inference can be drawn that the legislative intent to prohibit favoritism in school board spending was changed by the adoption of the 1974 Constitution.
R.S. 17:59 originated as § 21 of Act 100 of 1922; it defines general school fund and prohibits special advantages to high schools. It allows communities desiring better facilities or longer sessions to secure funds for those purposes by special taxes or sources other than the general school fund. Sixteenth Section funds are part of the general school fund under 17:59, and may not be expended to provide advantages to schools in certain wards.
The policy and practice of the Tangipahoa Parish School Board is one of the problems the legislature intended to avoid when it required parishes to establish general school funds.
Therefore, the decisions of the lower courts are reversed. Defendant is enjoined from allocating or disbursing Section Sixteen funds exclusively to the wards or school districts in which they originated. A writ of mandamus is hereby issued directing defendant to credit all Sixteenth Section revenues to its general fund for the equal use and benefit of all schools within the Parish of Tangipahoa. All costs are to be borne by the defendant.
WATSON, J., dissents.