HALL, Chief Judge.
In this worker’s compensation action, defendants, Dixie Metal Company, Inc. and its insurer, C.N.A. Insurance Company, appeal a judgment granting plaintiff, Bobby Joe Loud, total and permanent disability benefits.
The issues are: the extent of plaintiff's disability, if any, under the worker’s compensation law in effect on February 18, 1982, the date of the original accident and the effect of a subsequent accident on the plaintiff's disability and the defendants’ accountability.
For reasons expressed in this opinion, we amend to award partial disability benefits until the date of the second accident and affirm the amount of permanent total benefits after that date.
FACTS
On February 18, 1982 plaintiff was employed at Dixie Metal when the front-end loader he was using accidentally struck a protruding metal pipe, causing the loader to stop suddenly. Upon impact, plaintiff received a jolt and immediately began to experience pain in his back. The pain was so intense that it took fifteen minutes for the plaintiff to climb down from the machine and report the accident to his employer. Despite its initial acuteness, the pain apparently subsided to the extent that plaintiff was able to return to work.
The following day, plaintiff was treated by a company doctor who prescribed some pain medication and instructed plaintiff to come back if the pain persisted. The pain medicine did some good and plaintiff never missed a day of work. He was nevertheless still bothered by nagging pain in his lower back, radiating pain in his leg, and numbness in his foot. In early March, 1982 Dixie Metal closed its plant and plaintiff was laid off. Afterwards, he received unemployment compensation benefits for eight months.
Because the pain persisted, plaintiff went to see Dr. Brian, an orthopedist on March 29, 1982. Dr. Brian performed a physical exam that essentially confirmed plaintiff’s complaints. Dr. Brian fitted plaintiff with a corset, prescribed some additional medicine, and recommended bed rest. The doctor lacked objective proof to make a positive diagnosis but the symptoms were consistent with a condition known as nerve root irritation.
Plaintiff returned to Dr. Brian in April, May, and June, 1982. The doctor noted that plaintiff’s condition had improved although the patient continued to suffer lower back pain. In addition to the medical doctor, plaintiff visited a chiropractor who also failed to give him any substantial relief from the pain.
In October, 1982 plaintiff went to work as a truck driver in Kansas. He drove an eighteen-wheeler roughly 400 miles per day before severe back pain forced him to quit that job after one-..month. •' Plaintiff returned to Dr. Brian in November, 1982, still *1357 complaining of pain. This examination revealed tenderness in the L5-S1 area. Dr. Brian continued a prescription of muscle relaxants and anti-inflammatory agents.
By December, 1982, the pain had worsened and Dr. Brian requested a new EMG; an earlier test had revealed “no gross neurological defects.” The results of the EMG, received in late January, 1983, showed “highly probable nerve root irritation in the first sacral joint.”
Notwithstanding his physical problems, plaintiff was able to secure a job as a truck driver for Martin Timber Company in January, 1983. This job, however, consisted of shorter trips, approximately 60 miles per day, and easier working conditions than the prior truck driving position. Along with his duties at Martin Timber, plaintiff worked every day in a service station store that he began leasing in March, 1983.
In August, 1983, while working for Martin Timber, plaintiff filed this worker’s compensation suit against Dixie Metal demanding benefits for total and permanent disability, medical expenses, attorney’s fees, and penalties. Because suit was initiated more than one year after the initial accident (February 1982), defendants filed an exception of prescription which was sustained by the trial court. This court reversed the trial court ruling and remanded the case for trial, holding that plaintiff’s injury did not develop until December, 1982 or January, 1983; therefore, plaintiff was not barred by the one year prescriptive period. Loud v. Dixie Metal Co., 475 So.2d 122 (La.App. 2d Cir.1985).
Before the case went to trial, plaintiff returned to Dr. Brian in May, 1984 with complaints that the pain had grown worse in the last month. Plaintiff experienced good days and bad days; on the latter he could not work. Over the twenty-one month period that he was employed by Martin Timber, plaintiff missed only three weeks and worked an average of forty-six hours per week.
Plaintiff continued to work for Martin Timber until he reinjured his back while climbing down from a truck in October, 1984. Plaintiff has not returned to work and Martin Timber has paid worker’s compensation benefits since October, 1984.
Surgery to remove a herniated disc was performed by Dr. Holladay, an orthopedic surgeon, in November, 1984. Plaintiff also suffers from spinal stenosis, a narrowing of the spinal canal. Dr. Holladay concluded that plaintiff had a 15 percent permanent physical impairment of the lower back and body. The doctor recommended additional surgery to remove some of the bone narrowing plaintiff’s spinal canal in order to reduce his pain;
According to Dr. Holladay plaintiff would be able to perform some sedentary type activities, such as sitting, standing, walking short distances, and activities using his upper extremities. Dr. Holladay was of the opinion that plaintiff could not return to work as a truck driver.
In April, 1986 the case finally went to trial. The evidence primarily consisted of plaintiff’s testimony and the depositions of Drs. Brian and Holladay. Plaintiff testified that he was constantly in severe pain while driving a truck for Martin Timber. He was unable to take his medication because it made him drowsy. Shifting gears was painful because he had to lift his leg in order to push in and let out the clutch. Plaintiff also testified that he could not dolly down the landing gear on the trailer because of the winding motion; however, his duties at Martin Timber did not include loading or unloading the trailer. Plaintiff presented no corroborating lay witnesses as to the extent of his pain.
TRIAL COURT ACTION
The trial court found plaintiff permanently and totally disabled because he was working in substantial pain as a truck driver. The trial court set October 1, 1982 as the date plaintiffs injury developed. Plaintiff was awarded disability benefits of $183.00 per week beginning October 1, 1982 and unpaid medical expenses, but penalties and attorney’s fees were denied. From this judgment, defendants appeal.
APPLICABLE LAW
To recover benefits under the law, an employee must establish that he received a *1358 personal injury by accident arising out of and in the course of his employment. Disability is compensable only if it results from a work related accident. LSA-R.S. 23:1031; Lattin v. Hica Corp., 395 So.2d 690 (La.1981). Defendants stipulated that plaintiff’s original injury was work related. Hence, the initial issue presented for our review is whether the trial court erred in finding plaintiff totally and permanently disabled after his original injury developed.
At the time of plaintiffs injury, total disability was defined as the inability “to engage in any gainful occupation for wages whether or not the same or similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience_” [Emphasis added.] See LSA-R.S. 23:1221(1)(2); Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980).
Partial disability, as defined in Section 1221(3), is disability “to perform the duties in which he was customarily engaged when injured or duties of the same or similar character ... for which he was fitted by education, training, and experience.” [Emphasis added.] See Lattin v. Hica Corp., supra; Daly v. L.E. Myers Const. Co., 419 So.2d 512 (La.App. 2d Cir. 1982); and Marine v. Cornwall Equities Ltd., 472 So.2d 70 (La.App. 4th Cir.1985), writ denied, 477 So.2d 104 (La.1985).
A worker who cannot return to any gainful employment without suffering substantial pain is entitled to compensation benefits for total disability. Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La. 1981); Dusang v. Henry C. Beck Builders, Inc., supra; Whitaker v. Church’s Fried Chicken, Inc., 387 So.2d 1093 (La.1980). Substantial pain cases may also be analyzed within the framework of the odd lot doctrine which was adopted by the court in Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980).
A worker who, due to his injury, can function only with substantial pain or with the help of fellow workers may not be considered a particularly desirable employee. Thus, if a claimant’s pain appreciably limits the types of work available to him and greatly diminishes his ability to compete in the labor market, he can be treated as an odd lot worker and be awarded total disability, unless there is proof that jobs are realistically available to him. On the other hand, if a worker cannot perform the same work that he did before his injury because it causes him substantial pain, but he has the capacity to perform other jobs which are available, he should be considered partially disabled. Dusang v. Henry C. Beck Builders, Inc., supra.
EXTENT OF PLAINTIFF’S DISABILITY, IF ANY, PRIOR TO SECOND ACCIDENT
Even though we agree with the trial court that plaintiff was working in substantial pain while driving a truck for Martin Timber, it does not necessarily follow, as a matter of law, that he was totally disabled within the meaning of the applicable law. Dusang, supra; Clement v. Scaffolding Rental & Erection, Etc., 480 So.2d 813 (La.App. 4th Cir.1985), writ denied, 484 So.2d 672 (La.1986). Except for the months of November and December 1982, plaintiff worked steadily after his injury developed. The pain was not so disabling as to require him to be hospitalized or prevent him from averaging forty-six hours of work per week for twenty-one months. Plaintiff did not even see a doctor from January, 1983 until May, 1984. No corroborating witnesses testified as to plaintiff’s degree of pain.
Given the plaintiff’s work history, the lack of corroborating witnesses, and the failure to see a doctor for almost a year and a half, the trial court was clearly wrong in finding plaintiff totally disabled from October, 1982 until October, 1984. Although he was unable to perform the full extent of the work he was doing at the time of the accident such as operating heavy equipment, his pain was not so substantial and disabling as to prevent him from engaging in other gainful work available to him. We conclude plaintiff was *1359 partially disabled under the Section 1221(3) definition.
Under Section 1221(3) plaintiff is entitled to 66% percent of the difference between the weekly wages he was earning at the time of his injury and any lesser weekly wages which he may earn during the period of his partial disability, not beyond a maximum of 450 weeks and subject to the credits allowed by law.
DISABILITY AFTER SECOND ACCIDENT AND CONNECTION WITH FIRST ACCIDENT
We agree with the trial court’s conclusion that plaintiff was permanently and totally disabled after the October, 1984 accident and that the original accident and injury combined with or was aggravated by the subsequent accident which caused plaintiffs total disability.
After the October, 1984 accident, there was no doubt plaintiff was totally disabled. Although an additional operation might reduce his level of pain and allow him to perform sedentary type activities, there was sufficient proof that plaintiff will not be able to engage in any gainful occupation for wages.
Defendants argue, however, that plaintiff’s disability stems not from the February, 1982 accident but rather the October, 1984 accident.
When a work related injury is subsequently exacerbated, the aggravation is regarded as a development of the initial accident even though it occurs away from the employer’s premises and after the employment has been terminated. Bolden v. Georgia Cas. & Sur. Co., 363 So.2d 419 (La.1978); Cacioppo v. Tangipahoa Parish School Board, 404 So.2d 945 (La.1981).
After the February, 1982 accident, Dr. Brian noticed tenderness in the L5-S1 area, the same location where the ruptured disk was removed by Dr. Holladay after the 1984 accident. Also, the EMG taken in January, 1983 showed nerve root irritation at the first sacral joint and Dr. Brian suspected a bulging disk. Dr. Holladay, who was unaware of plaintiff's original accident and injury, agreed that a bulging disk at L5-S1 combined with the second accident could have caused the disk to rupture.
When a plaintiff’s present disability is due to a combination of incidents or to a second accident aggravating the prior injury, both the compensation insurer of the first accident and the compensation insurer of the second accident are liable in solido for compensation benefits. Scott v. Hartford Acc. & Indent. Co., 302 So.2d 641 (La.App. 3d Cir.1974). Plaintiff cannot, however, recover benefits from two different employers at the same time for two separate injuries.
Since plaintiff’s employer and its insurer at the time of the second accident are not parties to this suit, no judgment can be rendered against them and the compensation benefits cannot be prorated in this proceeding. Guillory v. Travelers Insurance Company, 282 So.2d 600 (La.App. 3d Cir.1973), rev’d on other grounds, 294 So.2d 215 (La.1974).
DECREE
For the reasons assigned, the judgment of the district court is amended to award plaintiff compensation benefits for partial disability from October 1, 1982 to October 22, 1984 equal to 66% percent of the difference between the wages plaintiff was earning at the time of the February 18, 1982 accident and any lesser wages he actually earned in any week thereafter, not to exceed the statutory maximum, and subject to the credits allowed by law. The case is remanded to the district court for determination of the amount of partial disability benefits due. That part of the judgment awarding plaintiff weekly benefits for permanent total disability after October 22, 1984 is affirmed. Costs of the appeal are assessed to the defendants.
AMENDED IN PART, AFFIRMED IN PART, AND REMANDED.