SEXTON, Judge.
Plaintiff appeals a jury verdict which found that the defendant tortfeasor was at fault in a rear-end automobile accident but which also found that plaintiff sustained no damages in the accident. Plaintiff also complains that the district court assessed him with all costs of the proceeding below. We affirm.
On January 11, 1987, plaintiff and his girlfriend (now his wife) were stopped at the intersection of Louisiana Highway 789 and Louisiana Highway 5 in Keatchie, De-Soto Parish, when his vehicle was hit from the rear by a vehicle driven by defendant James E. Smith, Jr. At trial, plaintiff and his wife both described the impact as substantial; plaintiffs friend, who was parked near the intersection, testified that it sounded like a hand grenade exploding approximately 100 yards away.
Smith and his wife described the impact as a “tap” or “bump.” Mrs. Smith testified that her purse, which was resting on her lap at the time of the accident, was not knocked down as a result of the impact. The state trooper who investigated the accident testified that Smith’s vehicle left ap *1106 proximately 12 feet of light skid marks prior to making contact with plaintiffs vehicle. Plaintiffs vehicle then rolled approximately 20 feet before coming to a halt.[1] Damage to both vehicles was described as extremely light, mostly abrasion marks on the guard strips of the bumpers.
Immediately after the accident, Smith, an orthopedic surgeon, conducted an on-site examination of the plaintiff because of the plaintiffs complaints of significant pain and discomfort and because plaintiff was holding his neck. Smith testified that he found muscle spasm consistent with soft tissue injury and provided plaintiff with a dose of Naprosyn, an anti-inflammatory drug.
Plaintiff had significant back problems prior to this accident. In 1969, plaintiff was involved in an automobile accident where he ran into a cow. He also testified that he had fallen or been thrown from horses several times and had been hit over the back by a bar stool “a time or two.” In 1974 or 1975, plaintiff was involved in an automobile accident while he was riding a motorcycle.
In 1977, plaintiff was driving a tractor-trailer rig, commonly known as an 18-wheeler, when his vehicle was rear-ended by another tractor-trailer rig with sufficient impact that the driver seat in the vehicle’s cab, which was connected to the cab by four or five bolts, broke loose from its mounts. As a result of this accident, plaintiff filed a worker’s compensation lawsuit, at the conclusion of which he was adjudicated permanently partially disabled.[2] He was awarded 450 weeks of compensation benefits, which he was still receiving at the time of the instant accident.[3]
In 1978, he was involved in yet another vehicular accident involving two tractor-trailer rigs. Finally, in 1984, plaintiff was involved in another automobile/motorcycle accident when the driver of the automobile failed to yield at an intersection. Plaintiff’s injuries in that accident resulted, in part, in his being put in traction.
Plaintiff’s chiropractor, Dr. Don Guice, testified that he had treated plaintiff off and on since 1973. He agreed, on cross-examination, that plaintiff had, in layman’s terms, a “bad back.” He had treated plaintiff as recently as three months prior to the accident for some of the same or similar symptoms which plaintiff noted both immediately after the accident and later to his treating physicians during his treatment for injuries he alleged he sustained in the accident.
Plaintiff’s treatment after the accident consisted mainly of conservative treatment. One unusual aspect of this treatment is that he was simultaneously seeking treatment, on the one hand, from his chiropractor and, on the other hand, from orthopedic and other medical specialists without advising any doctor that he was simultaneously receiving other treatment. Also interesting is that plaintiff’s chiropractor, whom plaintiff had failed to advise of the 1987 automobile accident, was still billing the worker’s compensation carrier who had covered plaintiff’s 1977 tractor-trailer accident. The doctors, on the other hand, were unaware of the chiropractor’s treatment and largely unaware of the extent of plaintiff’s prior orthopedic problems and looked to the plaintiff and his insurer for payment.
Eventually, however, in an effort to resolve plaintiff’s continuing complaints, Dr. Jorge Martinez, who was aware of plaintiff’s accidents in 1977, 1984, and 1987, after running numerous tests and associating another doctor for a separate evaluation, performed a lumbar decompressive *1107 laminectomy involving three levels of plaintiffs vertebrae. He later removed a cervical disc and bony spurs, followed by the placement of a bone graft to achieve a fusion between the two levels from which the disc was removed. Following an extended period of recovery, Dr. Martinez assigned plaintiff a 21 percent disability rating with six percent of that disability related to the surgery on the plaintiffs neck and the remainder related to the condition of plaintiffs lower back.[4] Notwithstanding this rating, Dr. Martinez was of the opinion that plaintiff could do anything after the surgery that he could have previously done.
In response to questioning by plaintiffs own counsel, Dr. Martinez testified that he was unable to make a causal connection between plaintiffs back condition and the accident at issue:
A Well, he did have three accidents in the past. So there’s no way that I can tell which accident or how long the finding and what I found during this surgery had been there.
[[Image here]]
Q Assuming he had been functional after the first two accidents, had a steady job working for the Sheriffs Department, and then suffered this accident of January 11th, 1987, at which time he became disabled; could you say that there was an aggravation of the preexisting condition for which you operated on him for?
A Yes. I would say it’s possible it could be aggravated by an accident. But it’s possible that the condition has been there even before that.
In addition to the three accidents of which Dr. Martinez was aware, plaintiff had not told him of the accidents in 1969 (automobile/cow), 1974 or 1975 (automobile/motorcycle), 1978 (the second 18-wheeler incident), nor did he advise Dr. Martinez of accidents involving being thrown from horses or having been hit with bar stools.
With regard to plaintiff’s own testimony, the record reflects that plaintiff was evasive and/or ambiguous in response to certain questions involving the identification of his own automobile, his previous accidents, the results of his 1977 18-wheel-er accident, and his willingness or ability to testify in a straightforward manner.
Additionally, plaintiff was somewhat evasive when questioned about the worker’s compensation lawsuit which arose out of the 1977 18-wheeler accident and appears to have gotten a little testy when pressed for responses. Finally, he could not recall whether he told the chiropractor about the instant accident, although the chiropractor testified that the plaintiff had not told him of the accident.
Plaintiff’s appeal advances six assignments of error which ultimately raise only two issues: whether the jury was clearly wrong in its result and whether the district court erred in assessing all costs to the plaintiff.
In reviewing findings of fact by a district court, we are constrained by the standard of review which is conjointly referred to as “manifest error” or “clearly wrong” and which was reaffirmed by our supreme court.
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting *1108 as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneous-clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Rosell v. ESCO, 549 So.2d 840, 844-5 (La.1989), on remand, 558 So.2d 1360 (La.App. 4th Cir.1990), writ denied, 561 So.2d 105 (La.1990) (citations and footnotes omitted; emphasis ours.)
At trial below, the jury had the opportunity to observe and evaluate testimony and physical evidence regarding the accident, as well as plaintiff’s physical condition before and after the accident, including substantial amounts of medical treatment from a variety of sources. The record contains conflicts between plaintiff’s testimony and that of other witnesses, as well as conflicts between plaintiff’s testimony and some of the physical evidence introduced at trial.
Giving great deference to the conclusions of fact reached by the jury as required by Rosell, we are unable to say that the verdict was “manifestly erroneous” or “clearly wrong.” The jury apparently found some or all of plaintiff’s testimony internally inconsistent or implausible and chose to credit the testimony of other witnesses over that of the plaintiff. The jury obviously concluded that Smith was at fault in causing the accident, but found that the impact was so insignificant that plaintiff sustained no damages as a result thereof. Rosell tells us that this finding is not manifestly erroneous or clearly wrong. Plaintiff’s argument to the contrary is without merit.
Plaintiff additionally complains that the district court erroneously assessed him with all costs of the proceeding below. The district court may render judgment for costs, or any part thereof, against any party as it may consider equitable. LSA-C. C.P. Art. 1920. Considering the result reached by the jury, we find no abuse in the district court’s assessment of costs.
For the above and foregoing reasons, the district court judgment is affirmed. Costs of this appeal are assessed to the plaintiff/appellant.
AFFIRMED.

. Although plaintiff's wife testified that plaintiffs foot was on the brake at the time of contact, he admitted at trial that he had already disengaged the brake in anticipation of accelerating when the intersection was clear.

. His orthopedic surgeon assigned him a 15 percent disability based on the injuries sustained in that accident.

.Under the worker’s compensation law at that time, plaintiff could be adjudged partially disabled, even though he was capable of working, because he was not capable of returning to the same employment in which he was engaged at the time of the accident. See LSA-R.S. 23:1221(3) and Loud v. Dixie Metal Co., Inc., 506 So.2d 1355 (La.App. 2d Cir.1987).

. Dr. Martinez was careful to note that the disability related to the cervical region was due to the mere fact that plaintiff had had surgery on his neck, while the disability in plaintiffs lumbar region was related to the condition of the lower back after the surgery.